2008 WY 98

**Aaron Eugene SMITH, Appellant
(Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. S–07–0160.

Supreme Court of Wyoming.

Aug. 19, 2008.

Representing Appellant: Megan L. Hayes, Laramie, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Graham M. Smith, Assistant Attorney General. Argument by Mr. Smith.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶1] Aaron Eugene Smith was convicted after a jury trial of possession, manufacture or disposition of a deadly weapon with unlawful intent, use of a firearm while committing a felony and first degree murder. The district court denied his motion for a new trial in which he asserted that a juror was biased against his defense of not guilty by reason of mental illness and did not honestly answer questions about that bias during *voir dire*. He appeals from the district court's denial of his motion. Finding no error, we affirm.

## ISSUES

[¶2] Mr. Smith presents the following issue on appeal:

By express admission, Juror Hanschen had an actual bias at the time of trial against the defendant's mental illness defense. Because he failed to disclose this bias during *voir dire*, Mr. Smith is entitled to a new trial before 12 impartial jurors. The district court's conclusion that Juror Han-

schen was not biased at the time of trial should be reversed for clear error.

The State articulates two issues:

I. Did the trial court have authority to hear appellant's motion for new trial under Wyo.R.Cr.P. 33(b)?

II. Did the trial court abuse its discretion when it determined that Juror Hanschen was not biased at the time of Appellant's trial?

## FACTS

[¶ 3] On August 4, 2005, Mr. Smith shot and killed Henry McCone in Laramie, Wyoming. The State charged him with possession, manufacture or disposition of a deadly weapon with unlawful intent, in violation of Wyo. Stat. Ann. § 6–8–103 (LexisNexis 2007); use of a firearm while committing a felony, in violation of Wyo. Stat. Ann. § 6–8–101 (LexisNexis 2007); and first degree murder, in violation of Wyo. Stat. Ann. § 6–2–101 (LexisNexis 2005). Mr. Smith pleaded not guilty by reason of mental illness or deficiency to all counts. *See* Wyo. Stat. Ann. § 7–11–305 (LexisNexis 2007).

[¶ 4] The district court convened a jury trial. During *voir dire,* the defense made it clear that Mr. Smith was not contesting the fact that he had killed Mr. McCone; instead, his entire defense was that he was not legally responsible for the crimes because he was mentally ill when he committed them. Not surprisingly, defense counsel's questions during jury selection focused on the venire's opinions about, and contact with, mental illness. At the conclusion of the trial, the jury found Mr. Smith guilty of all three counts and the district court sentenced him to serve the remainder of his life in prison without the possibility of parole.

[¶ 5] Shortly after he was sentenced, an article was published in the Wyoming State Bar magazine, the Wyoming Lawyer. It was written by Mary Angell and titled "A Juror's Oath, A Juror's Responsibility." The article examined juror experiences in Wyoming trials. In researching her article, Ms. Angell interviewed people who had served on Wyoming juries. One of the people she interviewed was Juror Michael Hanschen, who served on Mr. Smith's jury. In the resulting article Ms. Angell described her discussion with Juror Hanschen as follows:

Because the defense in Smith's trial planned to argue he was not guilty by reason of mental illness, jurors in the pool were asked whether they had any relatives with a mental illness. One juror, Michael Hanschen, indicated that his brother, now deceased, was paranoid schizophrenic. Asked if he thought that would impair his ability to be objective, Hanschen said he thought it would likely make him more sensitive to Smith's condition. More pertinent to the case, however, was his fierce opposition to the use of the insanity plea, which was not revealed.

"During the jury selection, I was sitting next to a person who was a psychologist. (She was not selected.) I whispered to her, 'Are they saying the jury is going to be asked to decide whether the person is mentally ill?' and she said, 'Yes, I think so,'" said Hanschen.

"At that point, I actually wanted to be on the jury," he said. "I answered the questions honestly. I confess I had a bias that I didn't believe the insanity plea should rule out guilt, but they didn't ask me that question point blank. Perhaps they should have."

[¶ 6] Mr. Smith filed a motion for a new trial based upon newly discovered evidence of Mr. Hanschen's bias as revealed in the article. The district court held a hearing and denied Mr. Smith's new trial motion.[1]

## DISCUSSION

### 1. Motion F or a New Trial on Basis of Newly Discovered Evidence

[¶ 7] Initially, we must consider the State's argument that Mr. Smith's allegation of juror misconduct was not properly raised

---

1. Mr. Smith filed a notice of appeal after the judgment and sentence was entered by the district court. He requested and received a stay of his appeal to allow the district court to hold an evidentiary hearing on his motion for a new trial. After the district court ruled, the appeals process resumed.

in a motion for a new trial on the basis of newly discovered evidence. Wyoming Rule of Criminal Procedure 33 governs new trial motions and states in relevant part:

(a) *In General.*—The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice.

(b) *Any Grounds Except Newly Discovered Evidence.*—A motion for a new trial based on any grounds, except newly discovered evidence, shall be made within 15 days after verdict or finding of guilty or within such further time as the court may fix during the 15 day period; but the time for filing of motion may not be extended to a day more than 30 days from the date the verdict or finding of guilty is returned.

(c) *Newly Discovered Evidence.*—A motion for a new trial based on the grounds of newly discovered evidence may be made only before or within two years after final judgment but if an appeal is pending, the court may grant the motion only on remand of the case.

Mr. Smith presented his motion pursuant to W.R.Cr.P. 33(c), the newly discovered evidence provision, presumably because the time limit under Rule 33(b) had expired when he filed his motion.

[¶ 8] The State argues that only newly discovered evidence concerning the merits of the criminal case may be presented under Rule 33(c). It claims that Mr. Smith's complaint about juror misconduct should have been brought in a petition for post-conviction relief, pursuant to Wyo. Stat. Ann. § 7–14–101, et. seq. (LexisNexis 2007).

 [¶ 9] First, we note that, although typically the newly discovered evidence will pertain to the merits of the case, Rule 33(c) does not state that it only applies to such evidence. Thus, the plain language of the

rule does not prohibit use of subsection (c) for claims of juror misconduct. Federal Rule of Criminal Procedure 33(b)[2] is similar to Wyo.R.Cr.P. 33(c). As we have recognized in the past, when a federal rule of criminal procedure is similar to our corresponding rule, we look to federal case law for guidance in interpreting our rule. *Hoos v. State*, 2003 WY 101, ¶ 10, 75 P.3d 609, 611 (Wyo.2003).

[¶ 10] There are numerous federal court cases interpreting Fed.R.Crim.P. 33(b)(1) as allowing a motion for new trial on the basis of newly discovered evidence for assertions of juror misconduct. Many of the cases assume, without discussion, that such a complaint may be brought pursuant to Fed. R.Crim.P. 33(b)(1), provided the evidence is truly "newly discovered." *See, e.g., United States v. McKinney*, 952 F.2d 333 (9th Cir. 1991); *United States v. Bolinger*, 837 F.2d 436 (11th Cir.1988) (*per curiam*); *United States v. Jones*, 597 F.2d 485, 488 (5th Cir. 1979); *United States v. Dean*, 667 F.2d 729, 732–34 (8th Cir.1982) (*en banc*); *United States v. Desir*, 273 F.3d 39 (1st Cir.2001). Our own Tenth Circuit Court of Appeals allows a party to file a motion for a new trial under Fed.R.Crim.P. 33(b)(1), alleging that a juror lied during *voir dire*. *United States v. Apperson*, Nos. 04–3375, 04–3376, 153 Fed. Appx. 507, 2005 WL 2982282 (10th Cir. Nov.8, 2005) (unpublished).

[¶ 11] The district court relied on *United States v. Wander*, 465 F.Supp. 1013 (D.C.Pa. 1979), in concluding that an allegation of juror bias may be brought under the newly discovered evidence provision of Rule 33. That case specifically addressed whether only newly discovered evidence on the merits of the case was relevant under the rule. The court held:

We further considered that "newly discovered evidence" which will support a

---

**2.** Federal Rule of Criminal Procedure 33 states:

(a) Defendant's Motion. Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

(b) Time to File.

(1) Newly Discovered Evidence. Any motion for a new trial grounded on newly discov-

ered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

(2) Other Grounds. Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty.

new trial motion is not limited to evidence going to the merits of the case. It has been held "[s]imilar motions founded upon newly discovered evidence affecting the integrity of the jury's verdict have been treated as based upon newly discovered evidence within the meaning of the procedural rule ( [i].e., Rule 33)".... Of course, the evidence tendered as "newly discovered" must have, in fact, been found after the close of the trial, and there is an obligation to bring such matters diligently before the trial court.

*Id.* at 1020–21 (some citations omitted). *See also, United States v. Ramos,* 481 F.Supp.2d 717 (W.D.Tex.2006).

[¶ 12] The State points to cases from Maine and Vermont for authority that we should refuse to allow a motion for a new trial on the basis of newly discovered evidence for allegations of juror bias. *See, State v. Sheppard,* 155 Vt. 73, 582 A.2d 116 (1990); *State v. Gatcomb,* 478 A.2d 1129 (Me.1984). The legal rationale provided in those decisions is sparse. The Maine Supreme Court simply stated:

We decline to adopt ... an expansive definition of "newly discovered evidence." Although we are aware other courts have taken a different view, it has always been our position that the kind of evidence contemplated by the rule is solely that which bears on the guilt or innocence of the accused.

*Id.* at 1130.

[¶ 13] In deciding this issue, it is helpful to consider *Braley v. State,* 741 P.2d 1061 (Wyo.1987). In that case, this Court allowed a motion for new trial on the basis of newly discovered evidence of jury tampering. *Id.* at 1065–66. Obviously, jury tampering does not pertain to the underlying merits of the criminal case. Thus, the *Braley* decision indicates that this Court would not limit the application of Rule 33(c) to newly discovered evidence pertaining to the merits of the crime.

■ [¶ 14] We are persuaded that the federal courts have taken the correct position on this issue. The plain language of the rule does not limit its application to "newly dis-

covered" evidence on the merits of the case. Moreover, it may be difficult for parties to discover juror misconduct during the 15 day period immediately following the verdict in order to bring a motion under W.R.Cr.P. 33(b). We also see no benefit to requiring defendants to wait until the conclusion of their criminal case to file a petition for postconviction relief in order to obtain resolution of their concerns about juror misconduct. In fact, the State, while asserting that Mr. Smith's motion was improper, requests that we resolve the pending issue without requiring Mr. Smith to bring a petition for postconviction relief "in the interest of judicial expediency and economy." We see no reason to allow Mr. Smith to present his claim in a Rule 33(c) motion while denying future defendants the same opportunity. We conclude, therefore, that Mr. Smith's motion for a new trial is properly before this Court.

### 2. *Juror Misconduct*

■ [¶ 15] This Court has adopted the following standard for granting a new trial based on newly discovered evidence:

"In order to obtain a new trial on the basis of newly discovered evidence, a defendant must establish each of the following factors: 1) he did not become aware of the new evidence until after the trial; 2) it was not because of lack of due diligence that the new evidence did not come to light sooner; 3) the evidence is so material that it would probably produce a different result; and 4) the evidence is not cumulative.... If a defendant fails to prove any of these factors, the motion is properly denied."

*Robinson v. State,* 2003 WY 32, ¶ 20, 64 P.3d 743, 748–49 (Wyo.2003), quoting *Baumgartner v. State,* 7 P.3d 912, 915 (Wyo.2000). While we typically review a district court's decision on a motion for a new trial by applying the abuse of discretion standard, *see, e.g., Barker v. State,* 2006 WY 104, ¶ 12, 141 P.3d 106, 112 (Wyo.2006), the cases pertaining to juror bias and failure to answer *voir dire* questions honestly, as described below, direct us to review the legal questions *de novo* and the factual questions for clear

error. *See, e.g., Skaggs v. Otis Elevator Co.,* 164 F.3d 511, 515–17 (10th Cir.1998).

[¶ 16] The State does not argue that the evidence of juror bias in this case was not newly discovered or that, with due diligence, it could have been discovered earlier. Instead, the State, like the district court, focuses on the substantive question of whether Mr. Smith could show that Juror Hanschen was biased against his mental illness defense and did not honestly answer *voir dire* questions about that bias. That inquiry is relevant to the third element of our new trial test.

[¶ 17] Mr. Smith argues that the district court committed clear error when it found Mr. Hanschen was not biased and had not been dishonest during *voir dire*. Mr. Smith points out that the whole thrust of the questions asked by his counsel during jury selection was to determine how the prospective jurors felt about the defense of not guilty by reason of mental illness. Defense counsel, Tina Kerin, began her *voir dire* questioning with the following:

By Ms. Kerin:

Good morning, ladies and gentlemen. My name is Tina Kerin. I'm representing Mr. Smith today with Mr. Wolfe. I want to talk about a number of issues, and one issue that [the prosecutor] briefly touched on is very central to this case. You have heard what the charges are against Mr. Smith. What you did perhaps not hear or get a chance to understand was what his plea is to those charges. And just as a matter of factual background, very briefly, his plea is not guilty by reason of mental illness. And so many of these things that [the prosecutor] discussed about the crime and where it occurred, those are things that will come up during the trial, but I want to focus more not on what happened or where it happened but on your opinions or thoughts about this defense, this plea that Mr. Smith has entered in this case, which is not guilty by reason of mental illness.

Just preliminarily, have you heard of that, where they actually committed the crime, but they are saying that they don't have the criminal responsibility? Has ev-

erybody heard about that? I see a lot of people nodding their heads. Does anyone have some strong feelings about that? For example, does anyone think it is overused or something that's a technicality? And if you do or if you have any leanings that way, I want you to raise your hand so we can talk about it. It is a very important matter. . . .

. . . .

Specifically, with this case, for not guilty by reason of mental illness, I anticipate very briefly, without going into the facts, you will hear, in fact, that Mr. Smith committed the act that he is accused of committing. . . . Mr. McCone is the victim in the matter. And I think you won't hear a dispute about Mr. McCone being shot by Mr. Smith.

. . . .

Okay. I want to talk for a little bit about mental health issues, because I think they are very difficult and sensitive areas. The specific diagnosis that you may hear about in the course of the trial is schizophrenia of the paranoid type. And I first want to ask you, do any of you know someone or are you related to someone who's had severe mental health issues in the past?

[Several jurors raised their hands and were questioned]

. . . .

Ms. Kerin: Is there anyone else?

Juror Hanschen: My brother was diagnosed with schizophrenia.

. . . .

Ms. Kerin: And did you make personal observations about his behavior or how he responded to certain things?

Juror Hanschen: Yes.

Ms. Kerin: Okay. The interactions that you had with your brother, would those influence how you listen to the evidence in Mr. Smith's case?

Juror Hanschen: I–I hope it would make me more caring and sensitive to those issues. And I very much want to be impartial and listen to all the evidence.

Ms. Kerin: And, Mr. Hanschen brings up a good point. He says he hopes that it

would make him more caring as he listens to the evidence. Mental illness is something that used to have quite a stigma on it. . . .

. . . .

Ms. Kerin: [T]here will be psychological and psychiatric testimony in the case, and that will come, I anticipate from expert witnesses, probably from both sides, who will give competing opinions about the mental illness and the effect of the mental illness on what occurred the day of Mr. McCone's death. Does everyone here feel comfortable listening to psychiatric and psychological testimony, or do you think that that's not something that has proper place in the court room?

(No response.)

[¶ 18] After listening to the dialogue, one potential juror, Mr. Williams, who had been a school administrator and sports referee, stated that he strongly believed in personal responsibility for actions and that there should be consequences for those actions. After he told the defense attorney that he had "significant doubt" about whether he could set aside his personal feelings and follow the judge's instructions, she asked that he be excused for cause. In response to the prosecutor's and the district court's questions, however, Mr. Williams stated that he would do his best to follow the judge's instructions. Given that statement, the judge denied the defense motion to excuse him for cause.

[¶ 19] Defense counsel then continued her questioning as follows:

Ms. Kerin: Does anyone else have reservations that have come up as we have had this discussion with Mr. Williams? Is anyone concerned about that type of defense now that there's been more conversation about it and Mr. Williams has expressed some of his reservations?

Juror Hanschen did not respond to her question and, shortly thereafter, Ms. Kerin passed the jury for cause. The defense used one of its preemptory challenges to remove Juror Williams from the jury, but Juror Hanschen remained.

[¶ 20] As indicated above, the article published in the Wyoming Lawyer magazine quoted Juror Hanschen as saying that he "had a bias that I didn't believe the insanity plea should rule out guilt, but they didn't ask me that question point blank. Perhaps they should have."

[¶ 21] At the hearing on Mr. Smith's motion for a new trial, Ms. Kerin, Ms. Angell and Mr. Hanschen testified. Ms. Kerin described her strategy for jury selection as follows:

Pretty much the entire focus of my jury selection was on the mental illness defense and how jurors felt about that. From reading and training, I know that people have strong opinions about that topic, and I wanted to make sure that we seated a jury that could listen to that type of defense and not have any predispositions against that type of defense.

She also testified that if Juror Hanschen had expressed the opinions in *voir dire* that he expressed in the article, she would have "sought to have him removed for cause. Had I been unsuccessful in that, I would have exercised one of our preemptory challenges to remove him from the jury."

[¶ 22] Ms. Angell testified about her writing process in general and specifically about her interview with Mr. Hanschen. She stated that when she interviewed people for her articles, she took notes by hand and then later transcribed them into her computer. She referred to these transcribed notes as her "slop file." Ms. Angell explained that she color coded each interviewee's statements and that she would cut out parts of her notes to use in her article. Ms. Angell stated that her interview with Mr. Hanschen was much longer than her interviews with other jurors. She stated that he engaged in a discussion about the defense of not guilty by reason of mental illness and indicated that he opposed it. In addition to the information in the article about Mr. Hanschen's comments, Ms. Angell testified that he had made the following comments:

[H]e further said that he doesn't believe the insanity plea should be an admissible defense. He said something about Montana and Utah having done away with it. I don't know whether that's true or not and I didn't use that in my story because I

don't know if he had the right information there. But he said, I think it should be done away with. And he objected that jurors had to determine whether somebody was insane when he said, "They had expert witnesses who could not agree on his mental condition. So I don't feel that jurors should have that responsibility."

She said that she asked him why he had not disclosed those opinions during jury selection and he stated that he was not asked "point blank." Mr. Smith's attorney asked Ms. Angell if, based upon her conversation with Mr. Hanschen, she believed he held those opinions at the time of trial, and she responded, "Absolutely."

[¶ 23] Mr. Hanschen also appeared as a witness at the motion hearing. He testified as follows:

Q. Mr. Hanschen, do you have any opinions about the defense of not guilty by reason of mental illness?

A. Any opinions?

Q. About that defense.

A. I voted that there was insufficient evidence to show that he was—

The Court: That's not really responsive to the question, Mr. Hanschen. The question is, do you have any opinions generally regarding an insanity defense, not how you voted as a juror.

The Witness: I don't like the insanity defense, but I fully acted under the—how I was instructed as a juror.

Q. I—it's a very simple question. And I will let you expound. I'm just trying to get my question answered, which is, do you have opinions about the insanity defense?

A. I don't think it's swayed me in the least.

The Court: Mr. Hanschen, do you have an opinion, yes or no, generally regarding the insanity defense?

The Witness: Since the trial, I have definite opinions.

The Court: And I assume, [defense counsel], that you are talking about opinions at the time of *voir dire*, not opinions today, which may be different.

Defense Counsel: I am, sir. And that was my next question. I'm just trying to get him to answer my question and then—

The Court: At the time the jury selection process took place, did you have opinions, generally, regarding the insanity defense?

The Witness: No. I was very curious, and I had no opinions at the time of the jury selection or bias or whatever. But I have since been quite interested. But at the time, no. I was ignorant, in fact, of what an insanity defense was all about. Curious, yes; but opinion, no, at the time.

Defense counsel then asked Mr. Hanschen about the quotes attributed to him in the article.

Q. Have you found where you are quoted in the article?

A. Yes.

Q. I would just direct your attention to the paragraph beginning with a quote from you, "At that point." Do you see where I am looking, sir?

A. I think maybe you are the center of what you are asking, I answered the questions honestly. "I confess I have a bias that I didn't believe the insanity plea should rule out guilt."

Q. Correct. Would you just stop right there, Mr. Hanschen?

A. Okay.

Q. So at that time, you just testified that before this trial, you had no opinions about the insanity defense. But this quote from the article would seem to contradict what you just testified to here. Do you see the quote, "At that time, I confess I had a bias"?

A. Okay. I can see where it would seem to contradict. All I can say is, so help me God, I acted as I was directed.

Q. That's not my question, sir.

A. Okay. I believe that—

Q. There's no question pending at this time.

A. Oh.

Q. Would you just please wait until I ask a question, Mr. Hanschen, before you address the Court?

At the time during jury selection, did you have an opinion about whether or not the insanity defense was good or bad for our society?

A. No. No. Actually, I have said that, no. Compared to what I have read since then, I had no understanding of it, nor did I—nor did I know what states or was I—was I to understand the history of it or anything. I had not researched the insanity plea. It did interest me that—the cases are interesting. There is an insanity plea. What, my goodness, is an insanity plea? Now, it says that I said to her that I had a bias. I would not have accepted the jury duty if I could not, in all honesty, have gone under the directions to judge whether this—

Upon further questioning, Juror Hanschen admitted that he "probably" made the statements attributed to him in the article. On cross examination by the prosecutor, Mr. Hanschen stated that he had not lied or withheld any information during jury selection. He also stated that he had followed the judge's instructions on the law.

 [¶ 24] Criminal defendants are constitutionally entitled to a fair trial before an impartial jury. United States Constitution, Amendment 6; Wyoming Constitution, art. 1, § 10. In addition, the constitutional right to due process of law guarantees a criminal defendant the right to an impartial jury. *Miller v. State*, 904 P.2d 344, 352 (Wyo.1995). "An impartial jury consists of those jurors who will conscientiously apply the law and find the facts." *Id.*, citing *Wainwright v. Witt*, 469 U.S. 412, 423, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985). *See also, Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982).

[¶ 25] *Voir dire* examination helps ensure the right to a fair and impartial jury by giving the parties the opportunity to discover biases and prejudices of potential jurors. *Miller*, 904 P.2d at 352. In *McDonough Power Equip., Inc., v. Greenwood*, 464 U.S. 548, 554, 104 S.Ct. 845, 849, 78 L.Ed.2d 663 (1984), the United States Supreme Court succinctly explained the purposes of *voir dire* examination:

One touchstone of a fair trial is an impartial trier of fact-"a jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982). *Voir dire* examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions on *voir dire* may result in a juror being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges. The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious.

In other words, *voir dire* examination helps the attorneys determine if the potential juror may be challenged for cause. Wyo. Stat. Ann. § 7–11–105 (LexisNexis 2007) states in pertinent part:

(a) The following is good cause for challenge to any person called as a juror in a criminal case:

. . . .

(ii) That he has formed or expressed an opinion as to the guilt or innocence of the accused, or is biased or prejudiced for or against the accused;

. . . .

(b) The same challenges for cause shall be allowed in criminal prosecutions that are allowed to parties in civil cases.

Since § 7–11–105(b) refers to the challenges allowed in civil cases, we also quote the pertinent provision of Wyo. Stat. Ann. § 1–11–203 (LexisNexis 2007):

(a) Challenges for cause may be taken on one (1) or more of the following grounds:

. . . .

(vi) Having formed or expressed an unqualified opinion or belief as to the merits or the main question of the action.

(vii) The existence of a state of mind in the juror evincing enmity or bias for either party.

 [¶ 26] Requests for a new trial on the basis that a juror was not honest during *voir dire* or was biased may be brought in

different ways. First, a claim may be brought under the principles articulated by the United States Supreme Court in *McDonough.* In order to obtain a new trial under *McDonough,* 464 U.S. at 556, 104 S.Ct. 845, a party must demonstrate

> that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

▆▆▆ [¶ 27] In order to satisfy the first part of the *McDonough* test, the party must show that the juror intentionally gave an incorrect answer to a *voir dire* question. *Gonzales v. Thomas,* 99 F.3d 978, 984 (10th Cir.1996) (applying the *McDonough* test to a criminal case). The question of whether a juror was honest during *voir dire* is a factual determination reviewed for clear error. *Skaggs v. Otis Elevator Co.,* 164 F.3d 511, 515 (10th Cir.1998). The district court concluded that Mr. Smith did not satisfy the first prong of the *McDonough* test:

> The first *McDonough* prong required a finding that Hanschen failed to answer a material question honestly. The *voir dire* process in this case was thorough and thoughtful. Potential jurors were asked multiple questions regarding their thoughts on mental illness and the "insanity defense." Hanschen failed to raise any concerns or bias during these proceedings. Accordingly, given the questions asked of Smith's potential jurors and Hanschen's failure to reply to them, this Court can only conclude that any dishonest answer given by Hanschen was intentional.
>
> The fatal flaw in Smith's argument, however, is a required finding that Hanschen was, in fact, dishonest. The Court finds Hanschen credible in his testimony that he had not formed a prejudice or bias at the time of *voir dire* and, even more, that he dutifully followed the direction of this

Court in serving as a jury member. Angell's article might suggest otherwise but, when reconciled with her raw notes, there clearly is room for speculation. Specifically, many of Hanschen's comments to Angell were in the present tense and reflected his opinions at the time of the interview, not at the time of *voir dire* six months earlier. Angell admitted that she failed to inquire into the differences in Hanschen's opinions "at present" versus at the time of the trial. Further, her rough notes reveal that Hanschen wanted to serve on the jury and "try to be fair." He was asked about his ability to be fair and had no concerns about it. He recognized that he would have listened to the "credible" evidence. In short, the article, the notes and Angell's testimony, taken together, are confused [and] inconclusive as to whether Hanschen had a pre-existing bias or prejudice. This Court simply cannot conclude on the basis of this evidence that Hanschen had any pre-existing bias or that he provided any dishonest answers or dishonestly failed to provide information concerning such at the time of *voir dire.*

[¶ 28] The district court also concluded that Mr. Smith did not satisfy the second part of the *McDonough* test because Mr. Hanschen consistently stated that he would follow the court's instructions and the court found his "explanation of his state-of-mind credible and plausible." Thus, the district court concluded that Mr. Smith would not have been successful in a challenge for cause.[3]

▆▆▆ [¶ 29] In addition to the *McDonough* test, a party can obtain a new trial by showing that the juror had an actual or implied bias. *Skaggs,* 164 F.3d at 516. "A finding of actual bias is 'based upon express proof, e.g., ... admission by the prospective juror of a state of mind prejudicial to a party's interest.'" *Id.* at 517, quoting *United States v. Haynes,* 398 F.2d 980, 984 (2d. Cir.1968). "Actual bias is a factual finding reviewed for clear error." *Id.* at 516. *See also, Gonzales,* 99 F.3d at 986. A determina-

---

3. The district court remarked that it had denied a motion for removal of Juror Williams for cause when he expressed similar sentiments.

tion on a claim of implied bias, on the other hand, is a question of law reviewed *de novo*. *Skaggs*, 164 F.3d at 517. "Implied bias can be proved by showing that the juror had a 'personal connection to the parties or circumstances of the trial'" or when there are "similarities between the personal experiences of the juror and the issues being litigated." *Id.*, quoting *Gonzales*, 99 F.3d at 987. The district court concluded that Mr. Smith had not shown that Mr. Hanschen was actually or impliedly biased.

[¶ 30] Mr. Smith's argument on appeal is directed at the district court's determination that Mr. Hanschen was not biased at the time of the trial. He claims that the district court committed clear error when it made that ruling. Mr. Smith asserts that Mr. Hanschen's testimony at the new trial motion hearing was implausible, contradicted by extrinsic evidence and internally inconsistent. He relies on *Banther v. State*, 823 A.2d 467 (Del.2003)⁴ to support his position.

[¶ 31] In *Banther*, the Delaware Supreme Court held the trial court's finding that the jury forewoman had not been honest in *voir dire* was clearly erroneous. *Id.* at 483–84. During *voir dire*, she stated that she had never been the victim of a violent crime. *Id.* at 476–77. After the trial, the defendant discovered that the forewoman had been sexually abused as a child by her grandfather. *Id.* at 484. Following a hearing on the defendant's motion for a new trial, the district court apparently ruled that her answers to the *voir dire* questions were not purposely dishonest. *Id.* On appeal, the supreme court concluded that the trial court's determination was clearly erroneous because her testimony that she did not consider the molestation to be a violent act was implausible, contradicted by extrinsic medical records and internally inconsistent. *Id.*

[¶ 32] As in *Banther*, Mr. Hanschen's statements were inconsistent on their face. The statements he made to Ms. Angell, which he confirmed at the motion hearing

that he had "probably" said, indicated that, at the time of *voir dire*, he did not believe that the mental illness defense should be allowed. It would seem logical that, if he held such beliefs at the time of *voir dire*, he should have responded to defense counsel's requests for responses from people who had opinions about the mental illness defense. However, the district court specifically found Mr. Hanschen's subsequent explanation about his seemingly inconsistent statements to be persuasive. Mr. Hanschen explained that, at the time of *voir dire*, he was curious about the mental illness defense but that he had not formed any specific opinions about it. He indicated that, after the trial, he had researched the issue and became convinced that the mental illness defense should be repealed in Wyoming. Mr. Hanschen stated, unequivocally, that he followed the judge's instructions on the law and he wanted Mr. Smith to have a fair trial.

[¶ 33] Unlike the situation presented in *Banther*, Mr. Hanschen's explanation of the inconsistencies in his statements is believable. Moreover, while Mr. Smith claims that Ms. Angell's article is extrinsic evidence that he was dishonest, the article did not have the objective indices of truth that the medical records in *Banther* had. We have no trouble determining that *Banther* is distinguishable from the case at bar. On this record, we cannot say that the district court's conclusion that Mr. Hanschen was not dishonest in responding to the *voir dire* question was clearly erroneous. Thus, we agree with the district court's conclusion that Mr. Smith did not satisfy the first part of the *McDonough* test.

[¶ 34] The district court also determined Mr. Smith did not establish that Mr. Hanschen's correct responses would have resulted in a valid challenge for cause. We agree. First of all, we have already affirmed the district court's finding that he was not dishonest during *voir dire*, so there are no "correct responses" to consider. Moreover, he stated repeatedly that he followed the

---

4. Mr. Smith also cites to *State v. Loftin*, 191 N.J. 172, 922 A.2d 1210 (N.J.2007). *Loftin* is not persuasive authority on the issue presented here. That decision focused on whether a juror, who made comments to his co-workers during the

trial indicating he had a racial bias and had prejudged the case, should have been removed from the jury and whether the trial court erred by failing to *voir dire* the remainder of the jury to determine if they were tainted. *Id.* at 1218–19.

judge's instructions. Even a prospective juror who has a bias may be properly seated on a jury if he "can set aside any supposed bias and decide a case only on the evidence presented in court." *Klahn v. State*, 2004 WY 94, ¶ 10, 96 P.3d 472, 479 (Wyo.2004). *See also*, §§ 7–11–105, 1–11–203. We cannot, therefore, criticize the district court's determination that Mr. Smith did not satisfy the second part of the *McDonough* test.

[¶ 35] The evidence described above also supports the district court's factual determination that Mr. Hanschen was not actually biased. Mr. Smith argues that Mr. Hanschen admitted an actual bias to Ms. Angell; consequently, he is entitled to a new trial. However, the district court essentially ruled that Mr. Hanschen's comments, as explained by him, did not amount to an admission of bias. We have already said that determination was not clearly erroneous. Thus, there is no basis for a finding of actual bias.

[¶ 36] Mr. Smith does not offer a cogent argument that Mr. Hanschen was impliedly biased, in accordance with *Skaggs*, presumably because there is no evidence that he had any personal connection to the parties or circumstances of the trial or that there were similarities between Mr. Hanschen's personal experiences and the issues being litigated.

[¶ 37] Affirmed.