2009 WY 104

Levi William JOHNSON, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. S–09–0029.

Supreme Court of Wyoming.

Aug. 21, 2009.

Kenneth DeCock of Plains Law Offices, LLP, Gillette, Wyoming.

Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶1] Appellant, Levi William Johnson, entered a conditional plea of guilty to conspiracy to deliver marijuana, reserving the right to challenge the denial of his motion to suppress. In this appeal, Johnson challenges, as he did below, the legality of the search of his residence under both the Wyoming and United States Constitutions. Finding that the district court's suppression ruling is insufficient to permit adequate appellate review, we remand the case to the district court for the limited purpose of supplementing the record with written findings consistent with this opinion.

## ISSUES

[¶2] Johnson states the issues as follows:

A. Was law enforcement's entry into the Appellant's residence a violation of the Appellant's Fourth Amendment right to be free of unreasonable search and seizure as guaranteed by the Constitution of the United States?

B. Was law enforcement's entry into the Appellant's residence a violation of the Appellant's right to be free of unreasonable search and seizure as guaranteed by Article 1, § 4 of the Wyoming Constitution?

## FACTS

[¶3] On February 21, 2008, Officer Vogt of the Gillette Police Department and members of the Campbell County Fire Department responded to a vehicle fire. The vehicle was located four to five feet in front of a mobile home, which was the residence of Johnson and his girlfriend, Brittany Kuhnel. Because smoke had engulfed the mobile home, firefighters asked Ms. Kuhnel, who had arrived at the scene, for permission to enter the home to conduct a safety check. Although Ms. Kuhnel was reluctant to consent, she eventually unlocked and opened the front door for the firefighters. The ensuing safety check revealed no smoke or damage, but disclosed a flag with a marijuana leaf on

the wall and a large sum of money on a coffee table.

[¶4] After learning about the flag and the money, Officer Vogt spoke with Ms. Kuhnel about her hesitancy to allow the firefighters in the home. Ms. Kuhnel indicated there were some items in the home she was not supposed to have. When Officer Vogt inquired about the presence of drugs, specifically marijuana, Ms. Kuhnel refused to answer the officer's question, stating, "That would be a confession. I plead the fifth." Officer Vogt then contacted narcotics detective Chad Trebby, who came to the scene.

[¶5] The facts of what transpired thereafter are in conflict. According to the testimony of Officer Vogt, he was briefing Detective Trebby about the incident when they noticed Ms. Kuhnel and Johnson walking toward the door of the mobile home. Officer Vogt testified Detective Trebby intercepted them, explained what he had learned from Officer Vogt, and requested consent to search the residence. Both Ms. Kuhnel and Johnson then asked what would happen if consent was not granted. According to Officer Vogt, Detective Trebby explained he would apply for a search warrant based on the information he had and, if a warrant was granted, the home would be searched. Officer Vogt also testified that Detective Trebby further informed them that if they consented to the search, he and Officer Vogt would conduct the search; whereas if he obtained a search warrant, a canine unit would be brought to the scene, resulting in a more intrusive search. Officer Vogt testified that Ms. Kuhnel and Johnson expressed concerns about their pet dog and the potential damage to their house if a warrant was obtained and ultimately consented to the search.[1]

[¶6] According to the testimony of Detective Trebby, he intercepted Ms. Kuhnel as she was approaching the door of the mobile home and talked to her about the information he had received from Officer Vogt. During that conversation, Ms. Kuhnel indicated there might be a small amount of marijuana in the mobile home. The detective then

1. Although Officer Vogt testified that the discussion about the canine unit and the more intrusive search occurred before the initial consent was obtained, he later stated on redirect that he could not recall if it occurred outside or inside the mobile home.

asked for permission to go into the residence and retrieve the marijuana. Detective Trebby testified that Ms. Kuhnel "said yes, but she wanted to speak with [Johnson]." They then walked over to where Johnson was standing by the smoldering vehicle. Detective Trebby asked Johnson for permission to enter the mobile home to retrieve the marijuana Ms. Kuhnel had mentioned. Johnson inquired what would happen if he refused consent, to which Detective Trebby responded he would apply for a search warrant and, if one was granted, he would return and search the home. Detective Trebby also explained to Johnson that if he "obtained a search warrant, due to the amount of time it took to obtain a search warrant and manpower that we needed to secure the scene, it would likely occur that ... Officer Vogt would be released from the scene and I would request the assistance of my counterparts with the police department and possibly an agent with the DCI to assist and secure and search the residence," and that they would conduct a "thorough and systematic" search of his house. Detective Trebby testified that Johnson then agreed to allow them into the residence to retrieve the marijuana: "he did make a statement that said— he indicated to me that he would allow us to go inside with him and get [the marijuana], then he began walking towards the front door with us following."

[¶ 7] Richard Pfeil, a friend of Johnson who was inside the mobile home at the time the officers entered with Johnson and Ms. Kuhnel, offered a different account of the events. Pfeil testified about a conversation he overheard between Detective Trebby and Johnson that occurred in front of the residence, in which the detective asked for permission to enter the house and Johnson inquired about the consequences of his refusal to grant permission. According to Pfeil, Detective Trebby told Johnson that "if he allowed him in the house now, they would just do a visual walk-through; and if he refused ... he would go get a search warrant and his team and tear the place apart."

[¶ 8] Ultimately, Johnson, Ms. Kuhnel, and the officers entered the mobile home. Once inside, Johnson gave Detective Trebby a small baggie of marijuana and some glass pipes. Thereafter, Johnson and Ms. Kuhnel consented to a further search of the home, but withdrew their consent a few minutes later. Based in part on the items found in the home, Detective Trebby sought and obtained a search warrant. When the warrant was executed, officers found, among other things, additional marijuana, drug paraphernalia, and money.

[¶ 9] The State charged Johnson with possession of marijuana with intent to deliver in violation of Wyo. Stat. Ann. § 35-7-1031(a)(ii) (LexisNexis 2009) and conspiracy to deliver marijuana in violation of Wyo. Stat. Ann. §§ 35-7-1031(a)(ii) and 35-7-1042 (LexisNexis 2009). Johnson filed a motion to suppress the marijuana evidence as fruit of an unlawful search under both the Fourth Amendment to the United States Constitution and Article 1, § 4 of the Wyoming Constitution. Johnson argued his consent for the officers' initial entry into the home was coerced and involuntary. In particular, he claimed consent was the product of his ignorance and fear about the consequences of resisting—specifically, the fear of a more intrusive search and damage to the home as a result of numerous officers and a drug dog executing a search warrant. Johnson argued that any evidence obtained as a result of that initial entry, including the evidence recovered during the execution of the search warrant, was tainted and should be suppressed as fruit of the poisonous tree. The State maintained the officers did not use coercive tactics to gain entry into the mobile home and that, given the totality of the circumstances, Johnson's consent was voluntary.

[¶ 10] At the conclusion of the suppression hearing, the district court summarily denied Johnson's motion to suppress stating:

> [B]ased on my examination of the totality of the evidence, I find the State's position is correct; that, in fact, the motion to suppress should be denied.

The written order denying the motion to suppress reflected the district court's conclusion that Johnson "voluntarily consented to the search of his residence."

[¶ 11] Thereafter, pursuant to a plea agreement, Johnson pled guilty to the con-

spiracy charge, reserving the right to appeal the denial of his motion to suppress. In exchange for his guilty plea, the State dismissed the possession with intent to deliver charge. The district court imposed a three-to-six-year prison sentence, which it suspended in favor of five years supervised probation under specified terms and conditions. This appeal followed.

## DISCUSSION

**** [¶ 12] This Court explicates our standard of review in every appeal that comes before us. This is not a frivolous exercise. The standard by which we review an appeal drives our analysis and, ultimately, our final determination. In almost every case, we are called upon to review both findings of facts and issues of law. For instance, as applies to the present appeal, this Court reviews a district court's ruling on a motion to suppress to determine if factual determinations are clearly erroneous. As always, we review legal conclusions de novo. *Kunselman v. State*, 2008 WY 85, ¶ 9, 188 P.3d 567, 569 (Wyo.2008); *Hembree v. State*, 2006 WY 127, ¶ 7, 143 P.3d 905, 907 (Wyo.2006).

**** [¶ 13] The key word is "review." Implicit in the term is that there are findings from a trial court to be reviewed. On the factual side, fact-finding is a basic responsibility of a trial court. Trial courts are therefore required to state their essential findings of fact on the record. W.R.Cr.P. 12(f) ("[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record"). Without such findings, this Court must engage in a de novo review. Certainly, there have been occasions where we reluctantly have done just that under the theory that we can affirm on any ground supported by the record. *Cohen v. State*, 2008 WY 78, ¶ 22, 191 P.3d 956, 961 (Wyo.2008); *State v. Williams*, 2004 WY 53, ¶ 12, 90 P.3d 85, 88 (Wyo.2004); *Innis v. State*, 2003 WY 66, ¶ 13, 69 P.3d 413, 418 (Wyo.2003). We have never, however, analyzed when such leniency might be granted, or even if it is ever appropriate under the language of Rule 12(f). We take this opportunity to do so.

[¶ 14] In construing Wyoming rules of procedure, where Wyoming and federal rules of procedure are similar, we have repeatedly looked to federal cases construing the federal rule as persuasive authority. *See Bird v. State*, 901 P.2d 1123, 1129 (Wyo.1995) ("[i]n our interpretation of our [Wyoming Rules of Criminal Procedure] having their source in the federal rules, we afford great persuasive weight to federal precedent"). *See also Smith v. State*, 2008 WY 98, ¶ 9, 190 P.3d 522, 525 (Wyo.2008); *Hoos v. State*, 2003 WY 101, ¶ 10, 75 P.3d 609, 611 (Wyo.2003); *Brock v. State*, 981 P.2d 465, 469 (Wyo.1999). The coinciding federal rule at issue is F.R.Cr.P. 12(d). In pertinent part, the federal rule mirrors the language of W.R.Cr.P. 12(f) and reads: "When factual issues are involved in deciding a motion, the court must state its essential findings on the record."

[¶ 15] There are at least two federal circuits—the Sixth and the Ninth—that have followed the plain language of Rule 12(d). Since the rule mandates findings of essential facts, these circuits summarily remand cases for supplemental findings when a trial court fails to make such findings on the record. Both circuits consider it especially important that findings of fact are made on the record in suppression hearings:

> "Suppression hearings are often as important as the trial itself." *Waller v. Georgia*, 467 U.S. 39, 46, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (citing concurring opinions in *Gannett Co. v. DePasquale*, 443 U.S. 368, 397, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). "The government's case may turn upon the confession or other evidence that the defendant seeks to suppress, and the trial court's ruling on such evidence may determine the outcome of the case." *Gannett*, 443 U.S. at 397 n. 1, 99 S.Ct. at 2914 n. 1 (Powell, J., concurring). "In many cases, the suppression hearing [is] the *only* trial, because the defendants thereafter plead[ ] guilty pursuant to a plea bargain." *Waller*, 467 U.S. at 47, 104 S.Ct. at 2216 (emphasis in original).

*United States v. Prieto–Villa*, 910 F.2d 601, 609–10 (9th Cir.1990). The Sixth Circuit has followed the Ninth Circuit's lead: "as noted by the Ninth Circuit Court of Appeals in

*Prieto–Villa,* a suppression motion is of utmost importance. Likewise, we conclude that compliance with Rule 12(e) [renumbered 12(d) ] is a mandatory obligation." *United States v. Moore,* 936 F.2d 287, 289 (6th Cir. 1991).

[¶ 16] At least one federal circuit takes the opposite approach and allows complete non-compliance with Rule 12(d). The Fifth Circuit will independently review the record to determine whether any reasonable view of the evidence supports the trial court's decision even in the absence of factual findings or indication of the legal theory underlying the trial court's decision. *See United States v. Schinnell,* 80 F.3d 1064, 1067 (5th Cir.1996).

[¶ 17] Most other circuits are somewhere in between. A summary of the majority application of Rule 12(d) is found in Moore's Federal Practice and Procedure:

**Appellate Review of Motions to Suppress**

\* \* \* \*

**[4] Appellate Court Must Accept District Court's Factual Findings Unless Clearly Erroneous**

In reviewing a ruling on a motion to suppress, an appellate court must accept the district court's factual findings unless they are clearly erroneous or influenced by an incorrect view of the law. It is inappropriate, therefore, for an appellate court to attempt to resolve disputed factual questions or to search the record for support for the prevailing party. The proper procedure is to remand with directions that the district court make express findings.

27 James Wm. Moore et al., *Moore's Federal Practice & Procedure* § 641.195[4] (3d ed.2006).

[¶ 18] This approach is further detailed in *United States v. Williams,* 951 F.2d 1287 (D.C.Cir.1991):

When a district court's ruling on a pretrial motion involves factual issues, Rule 12(e) [renumbered as 12(d) ] of the Federal Rules of Criminal Procedure commands the court to "state its essential findings on the record." The rule serves several functions. Findings on the record inform the parties and other interested persons of the grounds of the ruling, add discipline to the process of judicial decision-making and enable appellate courts properly to perform their reviewing function. If the district court not only fails to make "essential findings on the record," but also expresses nothing in the way of legal reasoning, if it simply announces a result, it may frustrate these objectives. We say "may" because there are cases in which the facts are so certain, and the legal consequences so apparent, that little guesswork is needed to determine the grounds for the ruling.

*Id.* at 1288. In *Williams,* multiple factual and legal issues were presented by a motion to suppress. The facts were not certain and the legal consequences were not obvious. The district court made no findings but rather simply denied the motion. The summary denial presented the Williams Court with two problems in its attempt at appellate review: "We do not know which facts the district court considered 'essential' to its ruling and we do not know what principle of Fourth Amendment law the court believed supported its ruling." *Id.* at 1289.

[¶ 19] Before remanding for further findings, the Williams Court reviewed the law regarding affirmation upon any grounds supported by the record:

Our only hesitation in remanding stems from *United States v. Caballero,* 936 F.2d 1292 (D.C.Cir.), *cert. denied,* 502 U.S. 1061, 112 S.Ct. 943, 117 L.Ed.2d 113 (1991)[ (1992) ], and several earlier decisions, which indicate that we will sustain a district court's denial of a motion to suppress, despite the court's failure to comply with Rule 12(e) [renumbered as 12(d) ], "if there is any reasonable view of the evidence that will support it." *Scarbeck v. United States,* 317 F.2d 546, 562 (D.C.Cir.), *cert. denied,* 374 U.S. 856, 83 S.Ct. 1897, 10 L.Ed.2d 1077 (1963), cited in *Caballero,* 936 F.2d at 1296. The stated rationale is that Rule 12(e) [renumbered as 12(d) ] confers on the litigants a personal "right" to have factual findings made, and that "failure to object" to a lack of findings "results in waiver." *Caballero,* 936 F.2d at 1296. This has the effect of denying defendants (and the government if it should appeal the

granting of a suppression motion) a windfall when the trial court omits a finding apparent on the face of the record, *see, e.g., United States v. Williams,* 822 F.2d 1174, 1177 & n. 39, 1179 & n. 61 (D.C.Cir. 1987), or when, under any possible view of the record, the district court could have reached but one result. *See, e.g., United States v. Lindsay,* 506 F.2d 166, 170–74 (D.C.Cir.1974).

One might wonder why, when there has been such a "waiver," it should follow that we will uphold the district court's decision if "any reasonable view of the evidence" supports it, *Scarbeck,* 317 F.2d at 562. The idea, at least as *Caballero* expresses it, is that the district court, in reaching its legal conclusion, presumably made whatever factual findings were needed to support the conclusion. Denying a remand because of "waiver," then, means we review facts we infer were actually, albeit silently, found. Our practice of using the "any-reasonable-view-of-the-evidence" standard means that we review those implicit findings under what may be, for all practical purposes, the equivalent of the "clearly erroneous" test we apply to "essential findings" explicitly made in compliance with Rule 12(e) [renumbered 12(d)]. *Caballero* and its antecedents thus rest on two assumptions. One, that the district court asked the right legal questions in making its ruling; two, that it actually weighed the evidence bearing on the facts needed to answer them. When, in a particular case, there is reason to doubt the validity of either or both those assumptions, the court may dispense with what *Caballero* seemingly requires, and remand the case to the district court. *See United States v. Jordan,* 951 F.2d 1278 (D.C.Cir.1991); *see also United States v. Prieto–Villa,* 910 F.2d 601, 606–10 (9th Cir.1990); *United States v. Castrillon,* 716 F.2d 1279, 1282–83 (9th Cir.1983).

If we knew the district court's legal reasoning in this case, we might have little difficulty in ascertaining the pertinent but unstated findings underlying it, as did the *Caballero* court. If we knew what facts the district court considered "essential" to its ruling (Rule 12(e)) [renumbered as 12(d)], we might be able to piece together the unstated legal grounds for its decision. But we have neither essential findings nor legal reasoning. As Chief Justice Hughes wrote, "it is always desirable that an appellate court should be adequately advised of the basis of the determination of the court below...." *Public Service Comm'n v. Wisconsin Tel. Co.,* 289 U.S. 67, 69–70, 53 S.Ct. 514, 515, 77 L.Ed. 1036, (1933). Here the "desirable" is the necessary.

*Id.* at 1290–91.

[¶ 20] This approach has been followed by the Tenth Circuit Court of Appeals. In supporting its remand for further findings in *United States v. Ramstad,* 219 F.3d 1263 (10th Cir.2000), the court stated:

> We note that where the district court makes no express factual findings, we normally uphold the district court's ruling if any reasonable view of the evidence supports it. *United States v. Broomfield,* 201 F.3d 1270, 1273 (10th Cir.2000). Here, however, the district court summarily denied Defendant's motion to suppress, providing no findings of fact and failing to explain the basis for its decision.

*Id.* at 1265 n. 2.

[¶ 21] We decline to follow either of the extreme federal constructions. Certainly W.R.Cr.P. 12(f) should not be completely ignored. Neither should it be strictly applied according to its plain language, requiring automatic remand if Rule 12(f) findings are not made. This would amount to a waste of judicial resources. Instead, we generally agree with the majority federal construction that the reasonable understanding of the rule should follow its purpose. Rule 12(f) is meant to create a record that allows for proper appellate review. If appropriate appellate review is possible, then, although we are loath to do so, we will proceed with our review even in the face of a violation of Rule 12(f).

[¶ 22] In accepting the majority construction of F.R.Cr.P. 12(d) in principle, we are by no means condoning any failure to comply with the mandate of W.R.Cr.P. 12(f). Failure to comply with Rule 12(f) puts this Court in the unenviable position of making findings

of fact de novo. Our decisions then must be based on written words in a cold record without the benefit of seeing and hearing any live witnesses testify or assessing their credibility and weight of the testimony. This is not a task in which an appellate court should engage. It is a vital function of trial courts to make findings of fact based on evidence it believes credible.

[¶ 23] Because fact finding is an essential function of trial courts, the limit we cautiously accept to the application of Rule 12(f) is very narrow. The absence of Rule 12(f) findings will be overlooked only when the circumstances of the record make just one conclusion possible, or leave no doubt as to the trial court's assessment of credibility.

[¶ 24] In the instant case, the record on appeal does not allow for application of this narrow exception. The issue is whether Johnson's consent for law enforcement officers to search his premises was voluntary. "The existence and voluntariness of a consent to search is a question of fact to be decided by the trial judge in the light of all attendant circumstances." *Stamper v. State*, 662 P.2d 82, 87 (Wyo.1983) (quoting *Parkhurst v. State*, 628 P.2d 1369, 1378 (Wyo.1981)). *See also Amin v. State*, 695 P.2d 1021, 1024–25 (Wyo.1985); *Nixon v. State*, 2001 WY 15, ¶ 16, 18 P.3d 631, 636 (Wyo.2001). Thus, the case before this Court is a fact-driven case where the legal principles at issue turn almost solely on the district court's interpretation of the facts.

[¶ 25] The district court was presented with conflicting evidence regarding the circumstances surrounding Johnson's consent. Despite the contradictory stories surrounding those circumstances the district court did not make any credibility determinations or expressly resolve any factual disputes. The district court was presented also with legal argument under both the Fourth Amendment to the United States Constitution and Article 1, § 4 of the Wyoming Constitution, yet the district court likewise failed to announce the legal principles on which it was relying. Given the dual lack of findings, this Court lacks any basis for review. Remand is thus required.

[¶ 26] Upon remand, the district court must make specific findings of fact. The district court must then determine based on the totality of those facts whether, in light of the mandates of both the Fourth Amendment to the United States Constitution and Article 1, § 4 of the Wyoming Constitution, Johnson's consent to the officers' entry into the mobile home was voluntary. The district court should consider all relevant factors bearing on the question of voluntariness, including, but not limited to, the officers' demeanor; Johnson's mental capacity; the detective's statements about the search warrant and associated search; deception, trickery or threats; and the presence of other coercive factors. *See Latta v. State*, 2009 WY 35, ¶ 12, 202 P.3d 1069, 1071–72 (Wyo.2009); *Seymour v. State*, 2008 WY 61, ¶ 19, 185 P.3d 671, 677 (Wyo.2008); *O'Boyle v. State*, 2005 WY 83, ¶¶ 40–42, 61, 117 P.3d 401, 413, 418 (Wyo.2005); *Grant v. State*, 2004 WY 45, ¶ 22, 88 P.3d 1016, 1021 (Wyo.2004); 4 Wayne R. LaFave, *Search and Seizure*, § 8.2 (4th ed.2004).

## CONCLUSION

[¶ 27] In this case, effective review is impossible because of the complete lack of factual findings and legal reasoning given by the district court for its denial of Johnson's motion to suppress. The record is remanded for the limited purpose of the entry of a supplemental order including the factual findings required by Rule 12(f) as well as a statement by the district court of the conclusions of law it has reached on those findings. We retain jurisdiction and will determine if rebriefing is warranted after the new order is entered in the record. The district court shall have ninety (90) days in which to enter its supplemental order and return the record to this Court.