2008 WY 51

**Richard L. WAGNER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–07–0104.**

Supreme Court of Wyoming.

May 2, 2008.

Representing Appellant: Diane Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel; and David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L.

Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric Johnson, Faculty Director, Prosecution Assistance Program; Brian Hunter, Student Director; Clarissa Collier, Student Intern. Argument by Ms. Collier.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] After being arrested for driving under the influence of alcohol (fourth offense), Richard L. Wagner (hereafter "Wagner") filed a motion to suppress claiming that the arresting officer did not have reasonable suspicion to justify the investigatory stop. The district court denied that motion. We will affirm the district court.

### ISSUES

[¶ 2] Wagner presents one issue for our review:

1. Did the Trial Court Err by Failing to Suppress Any Evidence Obtained After the Arrest of [Wagner] When That Arrest Was Not Supported By Reasonable Suspicion?

### FACTS AND PROCEEDINGS

[¶ 3] On June 26, 2006, Officer Lacey Hague, of the Torrington Police Department, was dispatched to Patrick Reifschneider's residence. Reifschneider had called the Torrington Police Department twice, reporting first that Wagner was at his residence and "was not to be there," and then that Wagner was "driving, and . . . intoxicated." Officer Hague was familiar with Wagner, and prior to responding, knew that he previously had been arrested for driving while under the influence, and that his driver's license was suspended. Officer Hague was also aware that the two men had a previous altercation, and that maybe Reifschneider "had it out" for Wagner.

[¶ 4] After she was twice unable to locate Wagner at Reifschneider's residence, Officer Hague drove around looking for Wagner. She eventually parked her vehicle near Reifschneider's residence and spotted Wagner driving his truck. Wagner noticed Officer Hague and put his truck in reverse to move behind a building and into a parking lot. Officer Hague pulled into the same lot, directly in front of Wagner's vehicle. By the time the officer had positioned her vehicle, Wagner was walking toward Reifschneider's residence. Officer Hague observed Wagner stumble repeatedly and hold onto a gate to maintain balance. Officer Hague noted that Wagner was "very, very unsteady on his feet."

[¶ 5] The officer got out of her vehicle and shouted toward Wagner, "Stop, I need to talk with you," but Wagner did not stop. She repeated herself, this time directing the comment only at Wagner: "Richard, stop. I need to talk with you." This time, he stopped and began making his way back to the officer, who again noticed he was "very unsteady." Officer Hague advised Wagner that he was not to be at Reifschneider's residence and, upon smelling an odor of alcohol, asked Wagner if he had been drinking. He responded in the negative, but by this time, Officer Hague noticed his speech was slurred to the point that she could not understand some of his comments.

[¶ 6] Wagner eventually walked away from Officer Hague, who followed him into the residence and asked him to perform field sobriety maneuvers. Wagner refused to perform any test. Wagner was arrested for drunk driving and taken into custody. He was transported to the detention center and refused both breath and blood alcohol tests.

[¶ 7] Wagner filed a *Motion to Suppress* which was denied by the district court. In its denial, the court found that it was "abundantly clear" that the contact made by the officer was reasonable and in direct response to a valid complaint. Furthermore, the "reasonableness" was "enhanced, not diminished" by what the officer knew of a prior altercation between the complainant and Wagner. There also was "ample evidence," according to the court, that Wagner was drunk, and that the officer observed him driving minutes before their confrontation. And finally, the court found that the arrest was "well supported by probable cause."

## STANDARD OF REVIEW

[¶ 8] Our standard of review is well settled in this matter, and as we have very recently stated:

In reviewing a trial court's ruling on a motion to suppress evidence, we do not interfere with the trial court's findings of fact unless the findings are clearly erroneous. We view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions. The constitutionality of a particular search is a question of law that we review *de novo*. *Fenton v. State*, 2007 WY 51, ¶ 5, 154 P.3d 974, 976 (Wyo.2007) (quoting *Pena v. State*, 2004 WY 115, ¶ 25, 98 P.3d 857, 869 (Wyo. 2004)).

*Sam v. State*, 2008 WY 25, ¶ 9, 177 P.3d 1173, 1176 (Wyo.2008).

## DISCUSSION

[¶ 9] Wagner's sole issue on appeal is that because Officer Hague lacked reasonable suspicion to justify the investigatory stop, any evidence obtained after that point should have been suppressed by the district court. The State disagrees and insists that because the officer possessed both personal knowledge of Wagner prior to the incident and information from an identified citizen's tip, along with her own observations from the scene, reasonable suspicion was present and justified. We side with the State.

[¶ 10] Encounters between law enforcement and private citizens can be classified into three categories. *McChesney v. State*, 988 P.2d 1071, 1074 (Wyo.1999).

[1] The most intrusive encounter, an arrest, requires justification by probable cause to believe that a person has committed or is committing a crime. [2] The investigatory stop represents a seizure which invokes Fourth Amendment safeguards, but, by its less intrusive character, requires only the presence of specific and articulable facts and rational inferences which give rise to a reasonable suspicion that a person has committed or may be committing a crime. [3] The least intrusive police-citizen contact, a consensual encounter, involves no restraint of liberty and elicits the citizen's voluntary cooperation with non-coercive questioning.

*McChesney*, 988 P.2d at 1074 (quoting *Wilson v. State*, 874 P.2d 215, 220 (Wyo.1994)); see also *Innis v. State*, 2003 WY 66, ¶ 16, 69 P.3d 413, 419 (Wyo.2003).

[¶ 11] For purposes of this appeal, we focus our attention on the investigatory stop, which, like an arrest, is a seizure that triggers Fourth Amendment safeguards. *McChesney*, 988 P.2d at 1074. Due to its less intrusive nature than an actual arrest, however, an investigatory stop requires only the presence of "specific and articulable facts and rational inferences which give rise to a reasonable suspicion that a person has committed or may be committing a crime." *Id.* Two inquiries must be made—when Wagner was "seized" for purposes of the Fourth Amendment, and upon being seized, whether or not the officer has reasonable suspicion that a crime had been committed.

[¶ 12] We first turn to whether or not, and when, Wagner was seized under Fourth Amendment standards. The encounter between Officer Hague and Wagner began when the officer positioned her vehicle in front of Wagner's truck after Wagner was walking away from the vehicle. At this point, the encounter was consensual because a reasonable person would have believed that he or she was free to leave, as Wagner did even after the officer beckoned him to stop. *Collins v. State*, 854 P.2d 688, 691–691 (Wyo. 1993). Having resisted submitting to a show of authority, Wagner remained unseized. *California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Not to be deterred, however, Officer Hague called out after Wagner a second time: "Richard, stop. I need to talk with you." This time, Wagner responded by turning and walking back toward the officer, signaling his submission to Officer Hague's detention.

[¶ 13] With Wagner being seized for purposes of the Fourth Amendment, the investigatory stop began and, thus, we turn

to the second portion of our inquiry—whether or not the officer had reasonable suspicion that a crime had been or was in the process of being committed. This Court uses a dual inquiry for evaluating the reasonableness of an investigatory stop: first, were the officer's actions justified at the inception of the investigatory stop, and second, whether or not the stop was reasonably related in scope to the circumstances that justified the interference in the first instance. *Damato v. State*, 2003 WY 13, ¶ 9, 64 P.3d 700, 704–05 (Wyo.2003).

[¶ 14] After reviewing the record in full, it is apparent that the investigatory stop was justified at its inception. Officer Hague testified to a number of "specific and articulable" facts which, taken together, warranted the intrusion. First, the officer had more than reasonable suspicion that Wagner was driving on a suspended license because she was familiar with Wagner, knew that he had been arrested several times for driving under the influence, and knew that his license was suspended as a result of those arrests. After observing Wagner driving his vehicle, she had reasonable suspicion to believe that Wagner was committing a crime. Officer Hague's knowledge of Wagner's past offenses, together with her observation of him driving, gave rise to the conclusion by the officer that Wagner had committed or was committing a crime.

[¶ 15] Wagner encourages this Court to ignore the officer's knowledge of his suspended license because this fact was not articulated by the officer as the basis for the initial contact or for the seizure. However, we decline to do so. The United States Supreme Court has recognized that an officer's subjective reasoning for making an arrest does not matter if the objective facts known to the officer were sufficient to create probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2005). In *Fertig v. State*, 2006 WY 148, ¶ 27, 146 P.3d 492, 501 (Wyo.2006), this Court noted that under our state's constitution, "an officer's subjective intent does not vitiate the probable cause that would otherwise justify the [Terry] stop." Furthermore, other

courts have recognized that the *Devenpeck* reasoning applies equally to investigatory stops. See *People v. Cherry*, 119 P.3d 1081, 1083 (Colo.2005) ("... the officer's subjective intent is not relevant to a determination that he has reasonable suspicion to conduct an investigatory stop.").

[¶ 16] Regardless of whether or not Officer Hague articulated that she had knowledge of Wagner's suspended license, it is undisputed that Wagner's license was indeed suspended. What is more, however, is that Officer Hague had reasonable suspicion to believe that Wagner was driving his vehicle while under the influence of alcohol. Several things amount to her suspicions being formed.

[¶ 17] First, she spoke with Mr. Reifschneider, an identified citizen-informant.[1] Reifschneider indicated both on the phone and in person to Officer Hague that Wagner was driving and was "very intoxicated." Next, Officer Hague noted a "surprised" look on Wagner's face when he noticed her patrol vehicle parked, and then made an attempt to elude her. And finally, even prior to the initiation of the investigatory stop, Officer Hague saw Wagner stumble, hold onto a gate in order to maintain his balance, and observed that he was "very, very unsteady on his feet." When taken together, the information provided by Reifschneider and Wagner's conduct, which alone could appear to be wholly lawful and seemingly innocent, helped to form the basis for a reasonable suspicion that criminal activity was afoot. *State v. Welch*, 873 P.2d 601, 604 (Wyo.1994).

[¶ 18] The totality of the circumstances in this instance established that Officer Hague had reasonable suspicion to believe that Wagner was not only driving under the influence, but also driving on a suspended license. The investigatory stop was justified, and we affirm the district court's order denying the motion to suppress and Wagner's conviction.

---

1. Identified citizen-informant tips are considered more reliable than that of anonymous informant tips because an identified informant exposes himself to possible criminal and civil prosecution if the report is false. *McChesney v. State*, 988 P.2d 1071, 1076 (Wyo.1999).