2009 WY 8

**Karen McGARVEY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–08–0070.**

Supreme Court of Wyoming.

Jan. 29, 2009.

Representing Appellant: Diane M. Lozano, Wyoming State Public Defender; Tina N. Kerin, Appellate Counsel; and Kirk A. Morgan, Senior Assistant Appellate Counsel. Argument by Mr. Morgan.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney

General; Jenny L. Craig, Interim Faculty Director, Prosecution Assistance Program; Eric Thompson, Student Director; and Jill Cottle Garrett, Student Intern. Argument by Ms. Garrett.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant, Karen McGarvey (McGarvey), entered conditional pleas of guilty to felony possession of marijuana, and misdemeanor possession of methamphetamines. The condition attached to her plea was that she be permitted to pursue an appeal of the district court's order denying, in part, her motion to suppress the evidence seized by the State at the time she was briefly stopped and then arrested. We will affirm.

## ISSUES

[¶ 2] McGarvey raises this issue:

Did the district court err when it denied [McGarvey's] motion to suppress because the initial seizure of Ms. McGarvey was not supported by reasonable suspicion of criminal activity?

The State essentially agrees with that statement of the issue.

## FACTS AND PROCEEDINGS

[¶ 3] On June 22, 2007, at approximately 1:20 a.m., Casper Police Officer Derrick Dietz was working with several other officers in search of a fleeing domestic assault suspect who was reported to have jumped into the North Platte River. Dietz was in the area of North Center Street near the Loaf 'N Jug, one block east of the river. Dietz observed a 1989 Honda, which McGarvey was driving, pull out of the Loaf 'N Jug onto North Center Street, heading southbound. He noticed the vehicle pulling out a little quickly, which caught his attention. He also noted there were two individuals in the vehicle and decided that he needed to conduct further observation. Officer Dietz followed the vehicle down North Center Street, trailing within a block of the vehicle. While he was doing so, McGarvey made a left-hand turn into a parking lot, quickly turned the vehicle around, and returned back onto North Center Street—all without stopping. McGarvey then accelerated quickly until she abruptly turned onto E Street without using a turn signal. Officer Dietz felt McGarvey's driving behavior was suspicious, in that it seemed she was trying to get away from his vehicle, which was a marked Casper City Police car. After turning onto E Street, McGarvey pulled in front of the Parkway Plaza (Parkway), leaving her car in a "no parking" area just north of the Parkway's canopied entrance.

[¶ 4] After the vehicle stopped, McGarvey and her passenger got of out the car and, although not quite running, they quickly began to walk inside the Parkway. Officer Dietz believed they were trying to avoid contact with him. He called in his location to dispatch and pulled his car up next to the Parkway's entrance so he could attempt to speak to the occupants of the vehicle. McGarvey and her male passenger were walking into the Parkway when Officer Dietz asked them to stop. It was conceivable that McGarvey did not hear Dietz, as she had by that time passed through the entrance door. However, the male passenger had not yet gone through the entrance when Dietz called out to them, and he appeared to ignore Officer Dietz's request, continuing into the building behind McGarvey without acknowledging that request.

[¶ 5] Officer Dietz entered the Parkway and noticed that McGarvey and the male passenger had started down a corridor located just past the front desk. He again identified himself and asked them to stop. They complied with this request. Officer Dietz asked McGarvey and the male passenger for their identification. While he was gathering information from the male passenger in the hallway, Dietz noticed that McGarvey appeared very nervous: sweating, stammering, and displaying nervous mannerisms. He also observed that, when McGarvey was giving him her identification information, she appeared to be trying to deceive him about who she was. She told him her name was Kathy Barber, reported a birth date, but stated that she could not recall her Social

Security Number. Dietz noted that McGarvey's continued nervousness, twitching, and inability to "stand still and maintain a normal conversational contact position" was indicative of an individual under the influence of some type of controlled substance. Dietz then asked her who owned the vehicle she had been driving, and she informed him that it belonged to a friend whose name she could not remember. He also asked her about the insurance information for the vehicle, to which she responded that she did not know that information.

[¶ 6] Dietz then asked McGarvey and the male passenger if they would walk over to the main lobby area with him, as he wanted to stand where he could be seen by an incoming back-up officer. Both McGarvey and the male passenger went back to the main lobby with Officer Dietz. As they arrived in the main lobby, McGarvey repeatedly attempted to put her hands into her pockets, and Officer Dietz asked her to stop two or three times. However, she did not stop putting her hands in her pockets but, rather, put her left hand into her left front pants pocket. He continued to ask her several times to stop and, when she did not stop, he reached down, stopped her hand, and did a cursory feel of the pocket for possible weapons. Officer Dietz felt what he thought was a cigarette lighter and a soft package. He then saw a glass vial inside a black baggie that was protruding from McGarvey's upper left shirt pocket. Officer Dietz recognized the glass vial as a "meth smoking pipe." McGarvey tried to put her right hand into her right front pocket, whereupon Dietz grabbed that hand after telling her that she needed to stop or she would be handcuffed for his safety. When she continued to put her hand in her pocket, the officer began to handcuff her and a struggle ensued. Dietz put her in an arm bar and took her to the floor so he could continue to put handcuffs on her, but she continued to struggle, apparently trying to take something out of her pocket and stuff it up through the leg of her shorts into the crotch area. As the struggle continued, the glass pipe and case in her shirt pocket fell to the floor. Dietz also observed a small bindle in McGarvey's shirt pocket which he believed to contain a controlled substance. The bindle later field tested positive for methamphetamine.

[¶ 7] After the struggle, Officer Dietz and McGarvey stood up, and another glass pipe fell out of her pant-leg and onto the floor. McGarvey told Dietz that this was what she had been trying to hide during their struggle.

[¶ 8] Officer Dietz then spoke with the Parkway desk clerk, David Garner, who told the officer that he recognized McGarvey as a former employee at the Parkway and "that she had been trespassed from the Parkway Plaza." A backup policeman, Officer Schulte, soon arrived, and he noticed several things on the ground where the struggle between Officer Dietz and McGarvey had taken place: car keys, cigarettes, and a little bindled baggie. Schulte pointed out these items to Officer Dietz, who seized the little bindled baggie. Dietz observed that the little bindled baggie contained what appeared to be marijuana, and such was later confirmed by a field test.

[¶ 9] McGarvey was then placed under arrest for the possession of controlled substances. Pursuant to a search incident to that arrest, Dietz found a small cylinder-shaped container on McGarvey's person which appeared to contain residue from a controlled substance. He took McGarvey outside and observed that she was walking with an unusual gait, apparently trying to hold her legs together as she walked. Dietz believed that she still had something in the crotch area of her pants that she was trying to hide. He placed her in the back of his patrol car and activated its audio and video recording devices. At about this same time, Dietz was notified by dispatch that the owner of the car he had followed was Karen McGarvey, who had an active warrant for a parole violation and a suspended driver's license. McGarvey heard this notification and, when asked her name by Officer Dietz, admitted that she indeed was Karen McGarvey and that she was on parole. Dietz then gave her the Miranda warnings, after which she again confirmed her name and parole violation. She also admitted to being in possession of

methamphetamine but denied the possession of marijuana.

[¶ 10] Based upon the confirmation that the vehicle belonged to McGarvey, Dietz conducted a further investigation of the vehicle. Through the window of the vehicle, he observed a digital scale, which he recognized as the type of item commonly used for both using and/or selling controlled substances. He also observed that the scale had residue on it, which appeared consistent with a controlled substance. During this time, Officer Dietz observed McGarvey moving around in the back of the patrol car. Consequently, he spoke with her and she complained of pain in her upper back. Dietz removed her from the patrol car to extend the handcuffs and make them more comfortable for her. As Officer Dietz was placing her back into the patrol car, he noticed her make a small kicking motion. When he closed the door and stepped back from the vehicle, he noticed a little blue container on the ground which had not been there before. That item seemed consistent with the soft packet he had felt in McGarvey's left pants pocket during the initial frisk. Inside the blue container were three additional bindles.

[¶ 11] Officer Dietz then searched McGarvey's vehicle and found packaging material, similar to that type which contained the marijuana and methamphetamine he had found earlier. He also located a white towel that held four ounces of marijuana. Furthermore, he found additional cylindrical containers, similar to the one McGarvey had in her right front pocket, as well as a clear glass vial, located in the glove box, that was later found to contain cocaine. Officer Dietz also located a mock soft air pistol under the passenger seat.

## DISCUSSION

### Standard of Review

[¶ 12] In this instance, the district court conducted a hearing and took evidence concerning the search and seizure at issue. In reviewing a trial court's ruling on a motion to suppress evidence, we do not interfere with the trial court's findings of fact unless the findings are clearly erroneous. We view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions. The constitutionality of a particular search is a question of law that we review *de novo*. *Sam v. State*, 2008 WY 25, ¶ 9, 177 P.3d 1173, 1176 (Wyo.2008); *Fenton v. State*, 2007 WY 51, ¶ 5, 154 P.3d 974, 976 (Wyo. 2007) (quoting *Peña v. State*, 2004 WY 115, ¶ 25, 98 P.3d 857, 869 (Wyo.2004)).

### Were the Searches and Seizures Lawful

[¶ 13] At the outset, we take note that McGarvey's contentions are limited to improper searches and seizures under the United States Constitution. She did not challenge them under the relevant provisions of the Wyoming Constitution in the district court, nor does she pursue such a theory in this Court. See *Fender v. State*, 2003 WY 96, 74 P.3d 1220, ¶¶ 11–12, 74 P.3d 1220, 1224–25 (Wyo.2003).

[¶ 14] At the conclusion of the suppression hearing, the district court made these brief findings:

THE COURT: ... I'm going to take the matters under advisement. My feeling is that we have very technical legal issues that are presented, at least as to the initial stop and the *Terry* detention that was involved with the initial stop and resulting pat-down of the defendant in this case.

I also think that as to the question of any suppression of the statements, the record as it's before me included an indication that there was an advisement of the warnings under Miranda. I didn't hear much in the way of evidence as to the voluntary waiver of those rights as to the agreement to voluntarily answer questions or to waive those rights, but I didn't hear it really be developed as to the details of the facts that may attend to the post-Miranda statements. So I feel like the record's a little bit deficient as to how to handle that particular issue.

As to the issue of the search of the vehicle, it did not appear to me that it was

a search incident to arrest. The arrest was perfected in the Parkway Plaza hotel at a location independent from where the vehicle was. And under cases that have followed *Coolidge versus New Hampshire,* it would appear to me that when an arrest is made in one location and is not incident to arrest, then a search warrant needs to be obtained. I don't think the officer has the ability to, on his own independent probable cause and what he has learned from contact with the defendant, to pursue a search of a vehicle that was not occupied and not in the possession of the defendant at the time of arrest. But I'll sure take a look at additional case law that may impact that decision given Mr. Marken's argument in this case.

It also appears to me that as to the plain view argument, that would not apply to a noncontraband item under the circumstances presented. But once again, I guess I'll have to take a look at that[.]

In the order filed of record on October 29, 2007, the district court wrote:

1. The search and seizure of [McGarvey's] person by Casper Police Officer Derrick Dietz was not unreasonable under the Fourth Amendment of the United States Constitution or under Article I Section IV of the Wyoming Constitution and constituted an appropriate investigatory stop justified from its inception and reasonably related to the scope of the circumstances which justified the initial interference. See *Putnam v. State,* 995 P.2d 632 (Wyo.2001[2000]); *Terry v. Ohio,* 392 U.S. 1[, 88 S.Ct. 1868, 20 L.Ed.2d 889] (1968); and *Wilson v. State,* 874 P.2d 215 (Wyo. 1994).

2. That the warrantless search of [McGarvey's] vehicle was not unreasonable and fell under the appropriate automobile exception in that Officer Dietz possessed probable cause to believe that the automobile contained evidence of a crime and/or contraband. See *Borgwardt v. State,* 846[946] P.2d 805 (Wyo.1997).

3. That the proof was insufficient to demonstrate that [McGarvey] had appropriately waived her Miranda rights in making any post-arrest inculpatory statements,

and therefore, absent further confirmation of a valid waiver having occurred following [McGarvey's] Miranda rights being given, any such post-custodial statements should be suppressed. See *Lewis v. State*[ 2002 WY 92, ¶¶ 17–18, 48 P.3d 1063, 1067–68 (Wyo.2002) ].

[¶ 15] Our precedents on this subject are voluminous. In *Speten v. State,* 2008 WY 63, ¶ 4, 185 P.3d 25, 27–28 (Wyo.2008) we described this analytical framework for evaluating issues such as those at hand:

The issue of the constitutionality of a search often focuses upon the question of whether or not the officer had probable cause to search, or the question of whether the officer had reasonable suspicion to initiate an investigative detention. These questions are resolved by resort to an objective test, taking into account the totality of the circumstances, rather than by analyzing the subjective thought process of the officer. *Fertig v. State,* 2006 WY 148, ¶ 25, 146 P.3d 492, 500 (Wyo.2006) (probable cause); *Meadows v. State,* 2003 WY 37, ¶ 17, 65 P.3d 33, 37 (Wyo.2003) (investigative detention). Probable cause to search exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found[.]" *Damato v. State,* 2003 WY 13, ¶ 17, 64 P.3d 700, 707 (Wyo.2003) (quoting *Ornelas v. United States,* 517 U.S. 690, 695–96, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996)). By contrast, reasonable suspicion is simply " 'a particularized and objective basis' for suspecting the particular person stopped of criminal activity." *Id.* (quoting *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). Finally, while the test is objective, the officer's training, experience, and expertise are to be considered as part of the "totality of the circumstances." *McKenney v. State,* 2007 WY 129, ¶ 11, 165 P.3d 96, 98–99 (Wyo.2007); *Rohda v. State,* 2006 WY 120, ¶ 24, 142 P.3d 1155, 1167 (Wyo.2006); *Vassar v. State,* 2004 WY 125, ¶ 18 n. 7, 99 P.3d 987, 994 n. 7 (Wyo.2004).

[¶ 16] We note that Officer Dietz had over 19 years of experience in law enforcement work.

The district court did not make detailed findings of fact but the facts, as previously set out, are the raw material that we must parse in our analysis of this case. Decisions such as those the district court made are unfailingly fact intensive.

[¶ 17] In *Flood v. State,* 2007 WY 167, ¶¶ 14–15, 169 P.3d 538, 543–44 (Wyo. 2007) we described the three tiers of interaction between police and citizens:

> For Fourth Amendment purposes, we recognize three tiers of interaction between police and citizens. *Custer,* ¶ 13, 135 P.3d at 624–25. See also, *Collins v. State,* 854 P.2d 688, 691–92 (Wyo.1993). The least intrusive contact between a citizen and police is a consensual encounter. *Custer,* ¶ 13, 135 P.3d at 624–25. A consensual encounter is not a seizure and does not implicate Fourth Amendment protections. The second tier is the investigatory or Terry stop, named after the seminal case *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An investigatory detention is a seizure under the Fourth Amendment. *Custer,* ¶ 13, 135 P.3d at 624–25. However, because of its limited nature, a law enforcement officer is only required to show "the presence of specific and articulable facts and rational inferences which give rise to a reasonable suspicion that a person has committed or may be committing a crime" in order to justify the detention. *Id.,* quoting *Wilson v. State,* 874 P.2d 215, 220 (Wyo.1994). The most intrusive encounter between police and a citizen is an arrest. An arrest " 'requires justification by probable cause to believe that a person has committed or is committing a crime.' " *Id.* at 625, 135 P.3d 620 quoting *Wilson,* 874 P.2d at 219–20.

The case at bar is concerned with a traffic stop, which is analogous to an "investigatory detention." *Barch v. State,* 2004 WY 79, ¶ 7, 92 P.3d 828, 831 (Wyo. 2004). To determine whether the seizure was appropriate under the Fourth Amendment, we apply the two-step inquiry articulated in *Terry:* [ ] 1) Was the initial stop justified? and 2) Were the officer's actions during the detention " 'reasonably related in scope to the circumstances that justified the interference in the first instance [?]' " *O'Boyle,* ¶ 46, 117 P.3d at 414, quoting *Campbell v. State,* 2004 WY 106, ¶ 11, 97 P.3d 781, 784 (Wyo.2004).

Also see *Wagner v. State,* 2008 WY 51, ¶¶ 10–14, 182 P.3d 506, 509–10 (Wyo.2008).

[¶ 18] Furthermore, in *Custer v. State,* 2006 WY 72, 135 P.3d 620, ¶ 17, 135 P.3d 620, 626 (Wyo.2006) we elaborated:

> As we recognized in *Rice v. State,* 2004 WY 130, ¶ 25, 100 P.3d 371, 379 (Wyo. 2004), a seizure does not occur simply when a police officer walks up to a person in a public place and asks a question, provided there is no showing of force or indication the person is restrained from leaving. See also, *Innis v. State,* 2003 WY 66, ¶ 17, 69 P.3d 413, 419 (Wyo.2003); *Perry v. State,* 927 P.2d 1158, 1163 (Wyo.1996). This principle is consistent with our ruling in *Gompf[ v. State],* 2005 WY 112, [¶ 14,] 120 P.3d 980 [ (Wyo.2005) ], where we stated the Fourth Amendment was not implicated when officers approached a person's residence, knocked at the door, and asked questions.

[¶ 19] Finally, in *Sam,* ¶¶ 12–13, 177 P.3d 1173 at 1177, we held:

> Recently, we applied *Vasquez,* for the first time, as the basis for reversing a district court's order denying a motion to suppress. *Pierce v. State,* 2007 WY 182, 171 P.3d 525 (Wyo.2007). The circumstances of this case, as set out above, differ markedly from those in Pierce. In the proceedings below, and in the briefs in this appeal, both parties discuss several of the "exceptions" to the essential rule established by Vasquez. Those exceptions include: (1) That an officer may search the area immediately available to an arrested person for weapons or other contraband that might pose a threat to officer and/or public safety; (2) that the presence of a second passenger in the car who could present a threat to officer or public safety may justify a search; (3) the possible need to secure an arrestee's automobile may justify a search; and (4) that in such circumstances an automobile may be searched for evidence related to the crime which justified the arrest.

Because it is dispositive of this appeal, we will limit our consideration only to that exception which sanctions a search of the automobile for evidence which might relate to the crime for which Sam was arrested. Sam was arrested for multiple reasons, but the record is clear that the initial stop and the initial arrest were for violations of a protection order. Our careful review of the record convinces us that Beck's search of Sam's car was reasonable under all of the circumstances detailed above. That the cursory search of the car's interior uncovered evidence of the possession with intent to deliver proscribed narcotics, rather than evidence of the violation of the protection order, does not negate the admissibility of that evidence under our Vasquez rule. We do not think it is a requirement that a police officer be able to recite a specific list of what sorts of evidence might be relevant in such a circumstance, but some items identified were cell phones (which Sam used to make harassing calls), or writings of any sort that indicated what Sam's intentions were with respect to the individuals protected by the protection order. Other examples of evidence that might be pertinent would include instrumentalities that might be used to harass, harm or threaten protected individuals. See deShazer v. State, 2003 WY 98, ¶¶ 5–11, 74 P.3d 1240, 1243–44 (Wyo.2003).

[¶ 20] This recitation of the underlying facts and the applicable authority leads us to the conclusion that the search and seizure of McGarvey's person was not unreasonable under the Fourth Amendment of the United States Constitution. The district court might well have reasoned that Officer Dietz's initial efforts were aimed at a consensual encounter when he followed McGarvey and her companion to the Parkway. Of course, McGarvey's behavior quickly transformed the encounter into an investigatory stop, and segued equally as rapidly into an arrest for disobeying Officer Dietz's instructions and McGarvey's possession of controlled substances. Thus, when we apply the governing standard of review to the district court's decision with respect to the search of McGarvey's person, we are compelled to hold that the district court's tacit findings are not clearly erroneous. Officer Dietz had probable cause to arrest and to search McGarvey incident to that arrest.

[¶ 21] The search of the automobile is a somewhat more complicated question. Clearly there is a very close temporal relationship between McGarvey's occupation of the car and her arrest. It appears that the time between her getting out of the car and the search of it was of quite short duration. Officer Dietz's initial action with respect to the automobile was to merely look through the windows and observe what was in plain view. He could see a scales device that is commonly used in the marketing of controlled substances. We conclude that these factors weigh heavily in favor of categorizing the search of McGarvey's automobile as being one incident to her arrest and that the search of it was for evidence of the crime for which she was arrested. See Generally 3 Wayne R. LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 7.1(c), at 515–18 (Pocket Part 72–73, n. 87) ("Occupant"/"recent occupant" arrests and the Belton "bright line.") (4th ed.2004 and 2008–2009 Pocket Part); United States v. Mapp, 476 F.3d 1012 (D.C.Cir.2007) (search "which occurred around ten minutes after [defendant] was arrested, was not 'so separated in time or by intervening events that the [search] cannot be fairly said to have been incident to the [arrest].'"); United States v. Weaver, 433 F.3d 1104 (9th Cir.2006) (search "contemporaneous" under Belton where passenger arrested and placed in police car and then everyone waited 10–15 minutes before another police unit arrived before search undertaken). Taking into account all of the relevant evidence which the district court was privy to, we conclude that its findings in this regard were not clearly erroneous and that the search did not violate the Fourth Amendment.

## CONCLUSION

[¶ 22] We hold that the district court properly denied McGarvey's motion to suppress the evidence obtained incident to a search of her person and of her car. The

judgment and sentence of the district court are affirmed.