2012 WY 10

**Andy Lee LOVATO, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–11–0104.**

Supreme Court of Wyoming.

Jan. 31, 2012.

Representing Appellant: Elisabeth M.W. Trefonas, Trefonas Law, PC, Jackson, Wyoming.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Sue Chatfield, Senior Assistant Attorney General. Argument by Ms. Chatfield.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1] The appellant, Andy Lee Lovato, entered a conditional guilty plea to one count of possession of methamphetamine. In this appeal, he claims the district court incorrectly concluded that his right to be free from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution and article 1 section 4 of the Wyoming Constitution was not violated when he was seized by the police. Finding no error, we affirm.

## ISSUES

[¶ 2] Whether the district court erred when it concluded that the appellant's rights under the United States and Wyoming constitutions were not violated when he was seized, arrested, and ultimately searched by the police.

## FACTS

[¶ 3] On June 8, 2010, Detectives Willmarth and Sekerka with the Cheyenne Police Department began conducting surveillance on a house after receiving information that possible drug-related activity was occurring there. As the detectives approached the house, they saw a white Lincoln Town Car parked directly in front of the house, approximately 3–5 feet from the curb. An unidentified male was seated in the driver's seat of the car and the engine was running. There were no license plates on the car and, while there was a piece of white paper attached to the rear window of the car, the detectives could not read it. The detectives drove around the block and took a surveillance position where they could clearly see the car, although they did not have a clear view of the house. Shortly thereafter, a passenger entered the car and it left the residence.

[¶ 4] The detectives followed the Town Car in their unmarked vehicle with the hopes of identifying the occupants. While following the car, they observed the driver engage in several traffic violations, including an illegal lane change and failure to use a turn signal. The detectives requested a marked unit to pull the Town Car over for the traffic violations, but learned that no units were available in the area. They continued to follow the Town Car until it stopped abruptly in the middle of the road. The passenger of the

Town Car exited the vehicle and stared intently at, and proceeded to walk toward, Detective Sekerka, who had gotten out of the passenger side of the unmarked police car. Detective Sekerka said, "Cheyenne Police. I need to talk to you, sir." The passenger continued to walk toward the detective until he got to the end of the Town Car, where he began to run away. After a short chase, Detective Sekerka caught up with the passenger and was eventually assisted by Detective Willmarth. The passenger struggled with the detectives, but was eventually placed in handcuffs and arrested for interference with a peace officer. During this time, the driver of the Town Car left the scene. Detective Willmarth conducted a pat-down search and discovered a red metal canister, which contained methamphetamine, a digital scale, and $180 in the passenger's left-front pocket. The passenger was identified as the appellant.

[¶ 5] The appellant filed a motion to suppress evidence, claiming he was seized by the detectives in violation of his Fourth Amendment rights under the United States Constitution and article 1 section 4 of the Wyoming Constitution. He argued that, at most, the interaction between himself and Detective Sekerka was a consensual encounter that he was free to terminate at any time. Therefore, the detectives did not have probable cause to arrest him for interference with a peace officer because the appellant was under no legal obligation to submit to Detective Sekerka's request. The district court disagreed and concluded that the detectives could have lawfully stopped the Town Car for the traffic violations and would have also had the authority to control the appellant's movements during the traffic stop.

## STANDARD OF REVIEW

[¶ 6] When reviewing a district court's decision to deny a motion to suppress, this Court uses a two-part standard of review. We will not disturb the district court's findings of fact unless they are clearly erroneous.

*Feeney v. State*, 2009 WY 67, ¶ 9, 208 P.3d 50, 53 (Wyo.2009). If the district court did not make a finding of fact on a specific issue, we will "uphold the general ruling of the court below if supported by any reasonable view of the evidence." *Id.* The issue of whether an unreasonable search or seizure occurred is a question of law we review *de novo. Id.* "A district court judgment may be affirmed on any proper legal grounds supported by the record." *Id.*

## DISCUSSION

[¶ 7] The appellant does not appear to contend the detectives did not have the authority to pull the Town Car over for the observed traffic violations. Instead, he claims the detectives did not execute a traffic stop and, therefore, any authority the detectives may have had over a passenger in a traffic stop did not apply. Accordingly, the detectives needed reasonable suspicion of criminal activity separate from the traffic violations to justify the seizure. While we agree that the detectives did not execute a traffic stop, we hold that the detectives did have reasonable suspicion of criminal activity to justify the appellant's seizure which, after the appellant disobeyed and struggled with the detectives, led to probable cause for his arrest for interference with a peace officer.[1]

### Independent State Constitutional Analysis

[¶ 8] The appellant claims his seizure was a violation of article 1 section 4 of the Wyoming Constitution. However, he has not provided any independent analysis that the outcome under the Wyoming Constitution would differ from the federal constitution. We have consistently held that, when a party fails to provide "proper argument and briefing using a precise and analytically sound approach" when claiming a violation of article 1 section 4 of the Wyoming Constitution, we will decline to consider the issue. *Cotton v. State*, 2005 WY 115, ¶ 14, 119 P.3d 931, 934 (Wyo.2005). Therefore, we decline

---

1. The appellant's argument focuses on the constitutional nature of his seizure and does not challenge the constitutionality of the search independently. In other words, the appellant does not argue that the search was unconstitutional if the seizure was justified. Therefore, we focus our analysis only on whether the appellant's seizure was justified.

to consider whether the seizure was a violation of the Wyoming Constitution.

### Fourth Amendment

[¶ 9] The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. This Court has recognized three separate categories, or tiers, of interaction between a law enforcement officer and a citizen for the purposes of a Fourth Amendment analysis:

> The least intrusive contact between a citizen and police is a consensual encounter. *Custer* [*v. State*, 2006 WY 72], ¶ 13, 135 P.3d [620], 624–25 [ (Wyo. 2006) ]. A consensual encounter is not a seizure and does not implicate Fourth Amendment protections. The second tier is the investigatory or Terry stop, named after the seminal case *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An investigatory detention is a seizure under the Fourth Amendment. *Custer*, ¶ 13, 135 P.3d at 624–25. However, because of its limited nature, a law enforcement officer is only required to show "the presence of specific and articulable facts and rational inferences which give rise to a reasonable suspicion that a person has committed or may be committing a crime" in order to justify the detention. *Id.*, quoting *Wilson v. State*, 874 P.2d 215, 220 (Wyo.1994). The most intrusive encounter between police and a citizen is an arrest. An arrest " 'requires justification by probable cause to believe that a person has committed or is committing a crime.' " *Id.* at 625, 135 P.3d 620 quoting *Wilson*, 874 P.2d at 219–20.

*Feeney*, 2009 WY 67, ¶ 13, 208 P.3d at 54 (quoting *Flood v. State*, 2007 WY 167, ¶ 14, 169 P.3d 538, 543–44 (Wyo.2007)) (brackets in original).

[¶ 10] We have held that "a traffic stop is more analogous to an investigative detention than a custodial arrest[.]" *Id.* Therefore, we analyze the reasonableness of the traffic stop under the two-part test from *Terry v. Ohio*: "1) whether the initial stop was justified; and 2) whether the officer's actions during the detention were 'reasonably related in scope to the circumstances that justified the interference in the first instance.' " *Id.* (quoting *Damato v. State*, 2003 WY 13, ¶ 9, 64 P.3d 700, 705 (Wyo.2003)). The United States Supreme Court has further held that the first requirement of *Terry* is "met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity." *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S.Ct. 781, 784, 172 L.Ed.2d 694 (2009).

[¶ 11] The district court's conclusion that the detectives' seizure of the appellant was constitutional was based upon the premise that, because the detectives had observed several traffic violations, the stop was justified and, therefore, the appellant could be detained as a passenger pending inquiry into the traffic violation. It is undisputed that the detectives did, in fact, observe several traffic violations that would have justified an investigative detention by way of a traffic stop. And, if they had effectuated a traffic stop, they could have detained the appellant as a passenger in the vehicle while they investigated the traffic violation. *Id.* The problem with the district court's reliance upon this legal conclusion, however, is that a traffic stop never occurred. Instead, it is premised on a string of hypothetical situations that simply did not occur. The driver of the Town Car in which the appellant was a passenger abruptly stopped the car in the middle of the street without any show of authority by the detectives. Further, the only contact made with the occupants of the Town Car was with the appellant, and no contact was made with the driver. For these reasons, we do not believe the appellant's seizure was justified by being a passenger during a traffic stop.

[¶ 12] However, we do hold the detectives had reasonable suspicion of criminal activity to justify the appellant's seizure, which led to probable cause for his eventual arrest. When determining whether reasonable suspicion of criminal activity exists, this court must find "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *McGarvey v. State*, 2009 WY 8, ¶ 15, 200 P.3d 785, 790 (Wyo.2009) (internal quotation marks omitted). When doing so, we take into account the totality of the circumstances, including an officer's training, experience, and expertise. *Id.*

[¶ 13] Under the totality of the circumstances, the detectives had reasonable suspicion to believe the appellant was engaged in criminal activity. Both detectives testified that they were conducting surveillance on the house in front of which the Town Car was parked because of information they had received about possible drug related activity at the house. They observed the Town Car parked 3–5 feet from the curb directly in front of the house, with the engine running and a man sitting in the driver's seat. Detective Willmarth testified that when a vehicle is parked outside of a residence for a short period of time, it is indicative of drug activity. The appellant then got into the passenger side of the Town Car and the car drove away.

[¶ 14] The detectives followed the Town Car in an unmarked vehicle for some time until the driver abruptly stopped the car in the middle of the road. Detective Willmarth testified that the driver's sudden stop could be a countersurveillance tactic that is used when someone knows he is being followed by the police. Detective Sekerka testified that, in his experience, "if a vehicle just stops in the middle of the street they assume police are behind it. They stop the car, and they run, then you have a foot pursuit." After the Town Car stopped in the middle of the road, the appellant got out of the car, stared "intently" at Detective Sekerka, and began walking towards him. After Detective Sek-

erka identified himself as a police officer and asked the appellant to stop, he continued walking toward the detective until he reached the end of the car and then began to run away.[2]

[¶ 15] As is often the case, each of these observations and behaviors could be interpreted as innocent if reviewed in isolation. *See Feeney*, 2009 WY 67, ¶ 22, 208 P.3d at 57. However, seemingly innocent behavior may give rise to reasonable suspicion of criminal activity when considered together under the totality of the circumstances. The fact that the detectives observed the Town Car parked in front of a house that was the target of drug surveillance and the driver eventually engaged in what could be considered a countersurveillance maneuver, coupled with the appellant's bizarre and aggressive behavior towards Detective Sekerka and his headlong flight after discovering he was being confronted by law enforcement officers, justifies a finding of reasonable suspicion that criminal activity was afoot.

[¶ 16] The appellant generally describes his flight from the detectives as an exercise of his right not to cooperate with law enforcement, and argues that his refusal to cooperate cannot be the basis for reasonable suspicion or probable cause. This description, however, does not accurately describe the appellant's actions when confronted by Detective Sekerka. This was not a situation where the detective asked the appellant if he would answer some questions and the appellant refused. Instead, the appellant came toward Detective Sekerka in a hostile fashion and, once he learned that Detective Sekerka was a police officer, he fled. As the United States Supreme Court recognized in *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.* at 124, 120 S.Ct. at 676. The court explained that, "[a]llowing officers confronted with such flight to stop the fugi-

**2.** The appellant chose not to present any witnesses at the motion hearing. Therefore, the detectives' testimony was not controverted.

tive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning." *Id.* at 125, 120 S.Ct. at 676. Further, the court acknowledged that there may be innocent reasons for the flight of an individual confronted by an officer, but that the officer may detain the individual to resolve the ambiguity. *Id.* at 125, 120 S.Ct. at 677. Therefore, the appellant's flight from Detective Sekerka is an appropriate consideration when determining whether the detectives had reasonable suspicion of criminal activity.[3]

[¶ 17] Furthermore, because the detectives' pursuit and seizure of the appellant was justified, they were acting within the lawful performance of their duties. Therefore, they also had probable cause to arrest the appellant for interference with a peace officer, in violation of Wyo. Stat. Ann. § 6–5–204 (LexisNexis 2011), when he failed to obey Detective Sekerka's orders to stop running and when he struggled with the detectives once physical contact was made. Accordingly, the arrest was supported by probable cause and the district court did not err when it denied the appellant's motion to suppress.

## CONCLUSION

[¶ 18] The district court did not err when it denied the appellant's motion to suppress evidence because the detectives had reasonable suspicion of criminal activity justifying briefly detaining the appellant for further investigation. Further, the detectives had probable cause to arrest the appellant for interference with a peace officer after he failed to obey Detective Sekerka's commands to stop and then struggled with the detectives. We affirm.

---

**3.** This should not be interpreted as a bright-line rule that an individual's flight is sufficient on its own to be the basis of reasonable suspicion of criminal activity. Instead, it is simply an appro-

priate factor to be weighed under the totality of the circumstances. *See Wardlow*, 528 U.S. at 126–27, 120 S.Ct. at 677 (Stevens, J., concurring in part and dissenting in part).