KAUTZ, Justice.
[¶1] Michael Maestas entered a conditional guilty plea to marijuana possession, and reserved his right to appeal the district court's denial of his motion to suppress evidence. On appeal, Mr. Maestas argues the evidence resulted from a search which violated his rights under the Fourth Amendment to the United States Constitution. We affirm.
ISSUE
[¶2] This appeal presents only one issue:
Whether the district court erred in denying Mr. Maestas' motion to suppress.
FACTS
[¶3] On June 25, 2016, Corporal Bradley Halter from the Green River, Wyoming, police department stopped Mr. Maestas for a traffic violation. Mr. Maestas attempted to walk away from the traffic stop, which prompted Corporal Halter to hand cuff Mr. Maestas and ask him to kneel down. Corporal Halter immediately smelled marijuana emanating from Mr. Maestas' person, and observed that Mr. Maestas was impaired. Corporal Halter searched Mr. Maestas for weapons and found a small pocket knife in his right front pocket. As Corporal Halter removed the knife from Mr. Maestas' front right pocket, he felt what he described as a "rock" in Mr. Maestas' coin pocket. Corporal Halter believed the item was contraband-a controlled substance-and removed it from Mr. Maestas' coin pocket. Corporal Halter later determined the "rock" was methamphetamine. His continued search of Mr. Maestas also produced a marijuana cigarette and a small baggie of hashish.
[¶4] The State charged Mr. Maestas with possession of methamphetamine, possession of marijuana, interference with a peace officer, failure to produce liability insurance, and operating a vehicle with expired or improper registration. Mr. Maestas filed a motion to suppress the evidence obtained from Corporal Halter's search. He claimed the search and seizure that produced the methamphetamine was unreasonable under the Fourth Amendment. He further claimed the discovery of the marijuana and hashish was fruit of the poisonous tree because Corporal Halter would not have found those items had he not illegally discovered the methamphetamine. Following a hearing, the district court denied the motion to suppress without stating any findings of fact on the record. The district court's entire ruling consisted of the following statement: "I have listened carefully to the testimony and actually reviewed case law in this case based on what I have heard and what I believe to be the state of the law in *780 this regard, I am denying the Motion to Suppress."
[¶5] Mr. Maestas entered a conditional guilty plea to the possession of marijuana charge and reserved his right to appeal the district court's order denying his motion to suppress. In exchange for his conditional plea, the State dismissed the other four charges.
[¶6] After Mr. Maestas filed his appeal, we remanded the case to the district court to make factual findings as required by W.R.Cr.P. 12(f), and to state the conclusions of law it reached on those findings. On remand, the district court found and concluded:
Corporal Halter was removing the pocket knife from Defendant's right front jeans pocket when, without further manipulation, he felt the rock-like object which he immediately suspected was contraband. That the rock-like object was immediately suspected by Corporal Halter to be contraband, combined with Defendant's prior evasive actions, the odor of marijuana emanating from Defendant's person and Defendant exhibiting signs of impairment provided sufficient probable cause for Corporal Halter to also seize the suspected contraband from Defendant's right front jeans coin pocket at that time and without a warrant.
At the time Corporal Halter gained the requisite probable cause to believe the rock-like object was contraband, he was in the process of a protective pat-down search and was also within the lawful bounds of Terry. Corporal Halter had sufficient probable cause to believe the rock-like object was contraband contemporaneously with feeling the rock-like object with the palm side of his hand while removing the pocket knife, based on the totality of the circumstances at the time. Thus, the subsequent seizure of the contraband was lawful.
DISCUSSION
[¶7] A trial court's specific findings of fact are presumed to be correct. Shores v. Lindsey, 591 P.2d 895, 899 (Wyo. 1979). We must accept the district court's factual findings on a motion to suppress "unless they are clearly erroneous or influenced by an incorrect view of the law." Johnson v. State, 2009 WY 104, ¶ 17, 214 P.3d 983, 987 (Wyo. 2009), quoting 27 James Wm. Moore, et. al., Moore's Federal Practice & Procedure § 641.195[4] (3d ed. 2006). This deference is given to the trial court because it has an opportunity to view and hear the witnesses, and to assess credibility. Shores, 591 P.2d at 899. With respect to the legal analysis and conclusions of the district court, "we review the ultimate determination regarding the constitutionality of a particular search or seizure de novo." Sweets v. State , 2017 WY 22, ¶ 8, 389 P.3d 1214, 1216 (Wyo. 2017) ; Sen v. State, 2013 WY 47, ¶ 25, 301 P.3d 106, 117 (Wyo. 2013) (citing Owens v. State, 2012 WY 14, ¶ 8, 269 P.3d 1093, 1095 (Wyo. 2012) ).
[¶8] Mr. Maestas did not provide this Court with an independent analysis of the propriety of Corporal Halter's search and seizure under the Wyoming Constitution. "A state constitutional analysis is required unless a party desires to have an issue decided solely under the Federal Constitution." Damato v. State , 2003 WY 13, ¶ 8, 64 P.3d 700, 704 (Wyo. 2003) ; see Vasquez v. State , 990 P.2d 476, 485 (Wyo. 1999). Therefore, our review is limited to the Fourth Amendment to the United States Constitution.
[¶9] The Fourth Amendment guarantees "people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Mr. Maestas argues Corporal Halter performed an unreasonable search and seizure in violation of the Fourth Amendment because the search exceeded the scope of a reasonable investigatory search under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under Terry, a police officer may conduct a warrantless search and seizure if two conditions have been met. First, the officer must have reasonable suspicion that the suspect is involved in criminal activity, and second, the warrantless search is limited to a search for weapons when the purpose of the search is to protect the officers and citizens. Id .
[¶10] Mr. Maestas concedes Corporal Halter had the necessary reasonable suspicion to conduct the initial search. He had reason to stop Mr. Maestas, and then to pat him down *781 to determine if he had weapons. To conduct the search, Corporal Halter patted down the outside of Mr. Maestas' clothing and limited the search to areas where a weapon could be concealed. Corporal Halter discovered and seized a pocket knife from the right pocket of Mr. Maestas' pants. Still within the scope of Terry , Corporal Halter reached in Mr. Maestas' pocket to remove the pocket knife. As he removed the knife, Corporal Halter felt what he describes as a "rock or something similar to that." When Corporal Halter felt the rock-like object he "suspected" and "believed" the object was a controlled substance and removed the object from Mr. Maestas' coin pocket. Corporal Halter then continued to search Mr. Maestas and found additional controlled substances. Mr. Maestas argues Corporal Halter exceeded the scope of Terry and acted unreasonably when he seized the rock-like object he thought was contraband. Mr. Maestas asserts the evidence must be excluded because Corporal Halter seized items that were not reasonably related in scope to the search for weapons. This argument, however, ignores that an officer may reasonably seize an item he observes in "plain view" or "plain feel" while conducting the more limited Terry search.
[¶11] In Texas v. Brown , 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the U.S. Supreme Court adopted the plain view doctrine. Under this doctrine, an officer may seize an object that is in plain view of the officer if access to the object "has some prior justification under the Fourth Amendment." Id. at 738, 103 S.Ct. at 1541. To exercise this doctrine, it must be "immediately apparent" to the officer that the observed object is "evidence of a crime, contraband, or otherwise subject to seizure." Id. at 741, 103 S.Ct. at 1542 ; Coolidge v. New Hampshire , 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). "Immediately apparent" means the equivalent degree of certainty required for probable cause. Brown, 460 U.S. at 741, 103 S.Ct. at 1542. The Supreme Court explained that the term "immediately apparent" used in prior plain view cases was "an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary ...." Id. at 741, 103 S.Ct. at 1543. The term, however, does not require more than probable cause. When an officer views an object that is in plain view, the officer must contemporaneously believe the object is evidence of a "crime, contraband, or otherwise subject to seizure" and this belief gives the officer the necessary probable cause to seize the object. Id .,see Payton v. New York , 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).
[¶12] The plain feel doctrine is similar to the plain view doctrine. The plain feel doctrine permits an officer to "seize nonthreatening contraband detected through the sense of touch during a protective patdown search of the sort permitted by Terry , so long as the search stays within the bounds marked by Terry ." Minnesota v. Dickerson , 508 U.S. 366, 373, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993). If "an officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." Id. at 367, 113 S.Ct. at 2132. (Emphasis added.) The Supreme Court adopted the plain feel doctrine using the same principles as the plain view doctrine. When the plain feel doctrine requires that the contraband be "immediately apparent" as such, it only requires that the officer have probable cause to believe the item is contraband.
[¶13] Mr. Maestas argues that it was not "immediately apparent" that the object was an illegal controlled substance because Corporal Halter only suspected, or had a suspicion, to that effect. In previous cases, this Court has discussed the distinctions between reasonable suspicion and probable cause and has provided definitions for these terms.
The issue of the constitutionality of a search often focuses upon the question of whether or not the officer had probable cause to search, or the question of whether the officer had reasonable suspicion to initiate an investigative detention. These questions are resolved by resort to an objective test, taking into account the totality *782 of the circumstances, rather than by analyzing the subjective thought process of the officer. Fertig v. State, 2006 WY 148, ¶ 25, 146 P.3d 492, 500 (Wyo.2006) (probable cause); Meadows v. State, 2003 WY 37, ¶ 17, 65 P.3d 33, 37 (Wyo.2003) (investigative detention). Probable cause to search exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found [.]" Damato v. State, 2003 WY 13, ¶ 17, 64 P.3d 700, 707 (Wyo.2003) (quoting Ornelas v. United States, 517 U.S. 690, 695-96, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996) ). By contrast, reasonable suspicion is simply " 'a particularized and objective basis' for suspecting the particular person stopped of criminal activity." Id. (quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) ). Finally, while the test is objective, the officer's training, experience, and expertise are to be considered as part of the "totality of the circumstances." McKenney v. State, 2007 WY 129, ¶ 11, 165 P.3d 96, 98-99 (Wyo.2007) ; Rohda v. State, 2006 WY 120, ¶ 24, 142 P.3d 1155, 1167 (Wyo.2006) ; Vassar v. State, 2004 WY 125, ¶ 18 n. 7, 99 P.3d 987, 994 n. 7 (Wyo.2004).
Speten v. State , 2008 WY 63, ¶ 4, 185 P.3d 25, 27 (Wyo. 2008). (Emphasis added.)
[¶14] Corporal Halter stated that, when he felt the "rock-like" object in Mr. Maestas' coin pocket, he believed it was contraband. That belief was based on his experience and training. He had been a patrol corporal for ten years and had arrested several people with similar drugs in a similar pocket. He stated many times that, when he felt the object, he believed it was a controlled substance: "I suspected it to be a controlled substance"; "I felt something that I would suspect to be a controlled substance"; "I considered it to be a possible controlled substance"; "I had located the suspected methamphetamine." Certainly, more than a simple suspicion is required to support a reasonable search and seizure conducted on the basis of the plain feel doctrine. There must be more than a possibility that the item is contraband, the facts must indicate a probability, as determined by a reasonable person in similar circumstances. Although Corporal Halter testified both that he "suspected" and "believed" the item to be a controlled substance, the term "suspected," in the context of Corporal Halter's testimony, meant more than just a possibility-it indicated a probability.
[¶15] Mr. Maestas argues Corporal Halter did not have probable cause to believe the rock was methamphetamine because he admitted that the "rock" could have been anything. However, Corporal Halter clearly was not stating he reasonably believed the object was something other than a controlled substance when he agreed with Mr. Maestas' counsel that "it could have been anything." Although Corporal Halter did not use the specific words "immediately apparent," he provided sufficient facts to show that at the moment he felt the object, it was immediately apparent to him the object was contraband.
[¶16] Based on the district court's findings, Corporal Halter's seizure of the methamphetamine and subsequent search is supported by both the plain feel doctrine and by standard probable cause considerations. Wyoming applies a reasonable man standard to probable cause determinations and considers, as the district court did, the totality of the circumstances. In reviewing a plain feel situation, we consider the totality of the circumstances surrounding the attendant frisk, including "the nature of the object, its location, the conduct of the suspect, the officer's experience, and the reason for the stop." Commonwealth v. Zhahir, 561 Pa. 545, 751 A.2d 1153, 1163 (2000). The facts and circumstances of this case as found by the district court, including Mr. Maestas' attempt to evade law enforcement, the manner and location in which Corporal Halter felt the methamphetamine, and Corporal Halter's experience indicating the probability that the object was a controlled substance supports Corporal Halter's actions. Corporal Halter's testimony indicates that he felt and immediately believed the rock-like object was contraband. At that moment, Corporal Halter had probable cause to seize the object and extend his search beyond the limits of Terry. The district *783 court properly denied the motion to suppress.
[¶17] Affirmed.
FOX, Justice, dissenting, in which DAVIS, Justice, joins.
[¶18] I respectfully dissent. While the majority opinion accurately sets forth the standard for finding a "plain feel" exception to the warrant requirement, it does not correctly apply that standard to the facts of this case. Because the facts and circumstances here were not sufficient to make it immediately apparent to a reasonably prudent officer that the "rock" in Mr. Maestas' pocket was evidence of a crime, I would reverse.
[¶19] To begin, it is important to review some facts which are overlooked in the majority opinion. Corporal Halter testified:
A. When I removed the pocket knife from the pocket, that's when I felt something inside the coin pocket of the subject's right front pocket which felt to me like a rock or something similar to that .
....
Q. ... did you consider [the lump] to be a weapon of any kind or something that could represent danger to you?
A. No, sir. I suspected it to be a controlled substance.
....
Q. How is it that you knew that it was a rock in that pocket, contraband, as opposed to just something else that might have been in that pocket?
A. It felt like a rock. I can't explain it any better than that.
Q. So you are basing it just based totally on your officer training and experience; is that correct?
A. Yes, sir.
Q. Okay. Did you consider that it could have been anything else than what you suspected it to be?
A. It could have been anything, but it felt like a rock.
(Emphasis added.)
[¶20] This testimony makes it very clear that Corporal Halter had a suspicion, which, as the majority opinion recognizes, must be distinguished from probable cause. It is not the province of this Court, on appeal, to find that Corporal Halter, although he used the term "suspected," really meant something else. See majority opinion ¶ 14 (Corporal Halter "meant more than just a possibility-it indicated a probability," when he used the term "suspected."). This is particularly true when the district court (to which we give deference on fact findings) found that "Corporal Halter immediately suspected it was a controlled substance ...." (Emphasis added.) Similarly, when neither the officer nor the district court have expressed more than a suspicion that the "rock" was contraband, it is beyond this Court's ability to conclude that Corporal Halter's testimony that "it could have been anything" actually meant that "it was immediately apparent to him the object was contraband."
[¶21] These may be semantic differences, but they are important semantics, when we keep in mind that "[w]arrantless searches and seizures are unreasonable per se .... " Vassar v. State , 99 P.3d 987, 993 (Wyo. 2004) (citations omitted). "Plain feel" is one of the recognized exceptions to this rule, but, when a proper motion has been made by the defendant, the state bears the burden of proving that the exception applies. This Court has recognized that "there must be 'scrupulous adherence' " to the limits of a legal search. Taylor v. State , 7 P.3d 15, 21 (Wyo. 2000) (applying "plain view" doctrine to expanding scope of a legal search pursuant to warrant) (quoting United States v. Menon , 24 F.3d 550, 560 (3rd Cir. 1994) ).[1]
*784 [¶22] That Corporal Halter's suspicion did not rise to the level of probable cause is further confirmed by the following testimony:
Q. After you secured the knife, at that point in time did you continue to search outside Mr. Maestas or inside his pockets?
A. At that time I immediately began searching that coin pocket that I felt the rock inside.
Q. Okay. You just reached in, grabbed it out?
A. The baggie?
Q. Yeah.
A. No, sir, I did not. I reached into the pocket, I opened it as far as I could with my fingers and I observed that there was a plastic baggie with a white substance inside. At that time I retrieved gloves from my duty belt and I removed that item.
The district court's finding that Corporal Halter, while removing the knife from Mr. Maestas' pocket, "without further manipulation, ... felt the rock-like object which he immediately suspected was contraband" is clearly erroneous, or is influenced by an incorrect view of the law. While it is true that Corporal Halter did not further manipulate the "rock," he did take the additional step of visually confirming his suspicion. Only after Corporal Halter had visual confirmation of his suspicion did he have probable cause to search Mr. Maestas. The problem is that the step he took to obtain the visual confirmation exceeded the scope of a permissible search.
[¶23] The United States Supreme Court addressed the role of probable cause in the "plain view" analysis in Arizona v. Hicks , 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). There, the officer was lawfully located in an apartment under exigent circumstances when he happened to see stereo equipment (unrelated to the exigency) that he suspected to be stolen. Id. at 323, 107 S.Ct. at 1152. However, the incriminating nature of the equipment was not immediately apparent, as the officer needed to move the stereo equipment to inspect the serial numbers in order to confirm that the equipment was stolen. Id. at 324-26, 107 S.Ct. at 1152-53. The Court stated that moving the stereo equipment "even a few inches" was an "additional invasion" of the defendant's privacy, and even this slight additional invasion required probable cause. Id. at 325, 326, 107 S.Ct. at 1152, 1153. Because the inspection of serial numbers was supported only by reasonable suspicion-"something less than probable cause"-it was not a constitutional search under the Fourth Amendment. Id. at 326, 107 S.Ct. at 1153.
[¶24] In Minnesota v. Dickerson , the United States Supreme Court applied "by analogy" the "plain view" doctrine to the seizure of evidence that an officer perceives by sense of touch:
If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.
508 U.S. 366, 375-76, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993). In Dickerson , two officers observed the defendant leaving a building known by the officers to be a crack house. Id. at 368, 113 S.Ct. at 2133. When the defendant made eye contact with one of the officers, he abruptly stopped and began walking in the opposite direction. Id. at 368-69, 113 S.Ct. at 2133. Based on this evasive action and the fact he had just left a well-known crack house, the officers stopped the defendant. Id. at 369, 113 S.Ct. at 2133. While lawfully frisking the defendant, one of the officers felt a "lump" in the defendant's jacket. Id. The officer "never thought the lump was a weapon" but, rather, he suspected that it was contraband. Id. at 369, 378, 113 S.Ct. at 2133, 2138. The officer confirmed his suspicion by "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket." Id. at 378, 113 S.Ct. at 2138. The Dickerson court drew a parallel between manipulating the lump and moving the stereo equipment in Hicks . Id. at 378-79. 113 S.Ct. at 2139. The officer's manipulation of the lump indicated that the incriminating character of the object was not "immediately apparent." Id. at 379, 113 S.Ct. at 2139. Because the officer needed to expand his search beyond *785 that authorized by Terry v. Ohio , 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) to determine the object was contraband, the plain-feel exception did not permit the seizure. Id. at 379, 113 S.Ct. at 2139.
[¶25] The Dickerson court explained:
In Arizona v. Hicks , 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), this Court held invalid the seizure of stolen stereo equipment found by police while executing a valid search for other evidence. Although the police were lawfully on the premises, they obtained probable cause to believe that the stereo equipment was contraband only after moving the equipment to permit officers to read its serial numbers. The subsequent seizure of the equipment could not be justified by the plain-view doctrine, this Court explained, because the incriminating character of the stereo equipment was not immediately apparent; rather, probable cause to believe that the equipment was stolen arose only as a result of a further search-the moving of the equipment-that was not authorized by a search warrant or by any exception to the warrant requirement. The facts of this case are very similar. Although the officer was lawfully in a position to feel the lump in respondent's pocket, because Terry entitled him to place his hands upon respondent's jacket, the court below determined that the incriminating character of the object was not immediately apparent to him. Rather, the officer determined that the item was contraband only after conducting a further search, one not authorized by Terry or by any other exception to the warrant requirement. Because this further search of respondent's pocket was constitutionally invalid, the seizure of the cocaine that followed is likewise unconstitutional. Horton [v. California ], 496 U.S. [128,] 140, 110 S.Ct. [2301,] 2309-2310[, 110 L.Ed.2d 112 (1990) ].
Id. at 378-79, 113 S.Ct. at 2139.
[¶26] Here, the testimony establishes that Corporal Halter had no more than a suspicion that the "rock" was contraband until he opened the pocket and saw the white substance in the baggie. This cannot be distinguished from moving the stereo equipment to inspect the serial numbers in Hicks , or manipulating the contents of the defendant's pocket in Dickerson . For these reasons, I would reverse the district court and grant the motion to suppress.

I am mindful that we apply an objective test to the probable cause determination, McGarvey v. State , 2009 WY 8, ¶ 15, 200 P.3d 785, 790 (Wyo. 2009), but there is nothing in the record to indicate that Corporal Halter, a ten-year veteran of the Green River Police Department and a graduate of the Wyoming Peace Officer Basic Academy, is not the "prudent, reasonable, cautious police officer" that serves as our benchmark. Mascarenas v. State , 2003 WY 124, ¶ 10, 76 P.3d 1258, 1262 (Wyo. 2003) (quoting United States v. Davis , 458 F.2d 819, 821 (D.C. Cir. 1972) ).