# IN THE SUPREME COURT, STATE OF WYOMING

# 2025 WY 120

## OCTOBER TERM, A.D. 2025

**November 6, 2025**

MARK DAVID DAVIS,

Appellant
(Defendant),

v.

S-25-0106

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
The Honorable Joshua C. Eames, Judge

*Representing Appellant:*

Office of the State Public Defender: Brandon T. Booth, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel.

*Representing Appellee:*

Keith G. Kautz, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General.

*Before BOOMGAARDEN, C.J., GRAY, FENN, JAROSH, JJ., and KASTE, D.J.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**JAROSH, Justice.**

[¶1]   Mark Davis was pulled over for failing to activate his pickup truck's turn signal 100 feet or more before his turn.  A subsequent search revealed methamphetamine, marijuana, and drug paraphernalia.  The State charged Mr. Davis with felony possession of methamphetamine and felony possession of methamphetamine with intent to deliver.  Mr. Davis filed a motion to suppress, which the district court denied.  Mr. Davis then entered a conditional guilty plea on the possession with intent to deliver charge, preserving his right to appeal the denial of his motion to suppress.  On appeal, Mr. Davis argues the district court erred in denying his motion to suppress because the officer who pulled him over did not have reasonable suspicion to initiate a traffic stop.  We affirm.

## ISSUE

[¶2]   Mr. Davis asserts a single issue on appeal, which we rephrase as follows:

> Did the district court err in denying Mr. Davis's motion to suppress?

## FACTS

[¶3]   On June 21, 2024, Casper Police Officer Steven Jensen followed a Ford F-150 pickup truck driven by Mr. Davis and traveling north on Chestnut Street in Casper.  Officer Jensen estimated he was approximately 400-500 feet behind the pickup truck when he noticed Mr. Davis driving "very slowly" as he approached the stop sign at the intersection of Chestnut Street and West Collins Drive.  Officer Jensen noted the pickup's brake lights "on for some time."  According to Officer Jensen, Mr. Davis activated his right turn signal just before stopping at the intersection, after which he turned right.  In Officer Jensen's estimation, Mr. Davis did not activate his turn signal at least 100 feet prior to initiating his turn, as is required by Wyo. Stat. Ann. § 31-5-217(b) (LexisNexis 2025).[1]  He estimated Mr. Davis activated his turn signal no more than twenty feet "maximum" before the intersection.  After Mr. Davis turned right onto West Collins Drive, Officer Jensen pulled the pickup over.

[¶4]   On contact with Mr. Davis, Officer Jensen noticed an open can of beer in the center console.  Mr. Davis also told Officer Jensen he had a suspended driver's license.  Officer Jensen then asked Mr. Davis to step out of his vehicle so he could search it.  The subsequent search of Mr. Davis's pickup revealed approximately twenty-five grams of methamphetamine and sixteen grams of marijuana, along with one glass pipe with residue,

---

[1] Pursuant to § 31-5-217(b), "A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning."

1

and numerous empty jeweler's bags. A search of Mr. Davis incident to his subsequent arrest uncovered another four grams of methamphetamine.

[¶5] The State charged Mr. Davis with one felony count of possession of methamphetamine with intent to deliver, and one felony count of possession of methamphetamine, pursuant to Wyo. Stat. Ann. §§ 35-7-1031(a)(i)[2] and (c)(ii)[3] (LexisNexis 2025). Mr. Davis moved to suppress the evidence obtained during his encounter with Officer Jensen, arguing Officer Jensen's initial stop was not justified because evidence showed he activated his turn signal more than 100 feet before initiating his turn. As a result, according to Mr. Davis, Officer Jensen lacked reasonable suspicion that Mr. Davis violated the law.

[¶6] At the motion to suppress hearing, Officer Jensen testified that he has been a certified police officer for the State of Wyoming for five years, and received training in visually estimating speed and distance of vehicles. He also testified that part of his

---

[2] Pursuant to § 35-7-1031(a)(i):

> (a) Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:
>
> > (i) Methamphetamine or a controlled substance classified in Schedule I or II which is a narcotic drug, is guilty of a crime and upon conviction may be imprisoned for not more than twenty (20) years, or fined not more than twenty-five thousand dollars ($25,000.00), or both[.]

[3] Pursuant to § 35-7-1031(c)(ii):

> (c) It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this act. With the exception of any drug that has received final approval from the United States food and drug administration, including dronabinol as listed in W.S. 35-7-1018(h), and notwithstanding any other provision of this act, no practitioner shall dispense or prescribe marihuana, tetrahydrocannabinol, or synthetic equivalents of marihuana or tetrahydrocannabinol. No prescription or practitioner's order for marihuana, tetrahydrocannabinol, or synthetic equivalents of marihuana or tetrahydrocannabinol shall be valid, unless the prescription is for a drug that has received final approval from the United States food and drug administration, including dronabinol. Any person who violates this subsection:
>
> > (ii) And has in his possession methamphetamine or a controlled substance classified in Schedule I or II which is a narcotic drug in an amount greater than those set forth in paragraph (c)(i) of this section, is guilty of a felony punishable by imprisonment for not more than seven (7) years, a fine of not more than fifteen thousand dollars ($15,000.00), or both[.]

2

certification required accurately estimating speed and distance from opposing and oncoming vehicles. According to Officer Jensen, every day he is on duty he is required to estimate distance related to traffic stops he makes.

[¶7]    Officer Jensen testified that while he was parked on 10th Street, he observed Mr. Davis driving his pickup northbound on Chestnut Street, and that when Mr. Davis drove through the intersection of 10th Street and Chestnut Street, he pulled in behind Mr. Davis. Officer Jensen then observed Mr. Davis continue on Chestnut Street through its intersection with 9th Street, and approach the intersection of Chestnut Street and West Collins Drive, where he stopped for a stop sign. According to Officer Jensen, Mr. Davis was driving "very slowly" and had his brake lights on "for some time" prior to the turn signal being activated. Officer Jensen then used his training to estimate Mr. Davis's pickup was "mere feet" away from the stop sign when Mr. Davis activated his turn signal. Although he could not say the exact distance Mr. Davis was from the stop sign when he activated his turn signal, Officer Jensen estimated the pickup was a "maximum" of twenty feet from the stop sign.

[¶8]    Mr. Davis called one witness, Dan Dugan, an investigator with the Wyoming Office of the State Public Defender, who reviewed the dash cam video from Officer Jensen's patrol vehicle. Mr. Dugan testified the turn signal on Mr. Davis's pickup flashed twelve times and was on for eight seconds prior to the pickup stopping and turning onto West Collins Drive. He then opined, based on his assumption that Mr. Davis was traveling twenty-five miles per hour (the speed limit), Mr. Davis activated his turn signal 293 feet before turning onto West Collins Drive. However, during cross-examination Mr. Dugan conceded Mr. Davis was not traveling twenty-five miles per hour from the time he activated his turn signal until he stopped at the stop sign, and that he did not know how fast Mr. Davis was driving as he approached the intersection.

[¶9]    The district court denied the motion to suppress. In its written order, the district court explained that it had reviewed the dash cam video multiple times and that it was not clear where Mr. Davis's pickup was in relation to the stop sign when he activated his turn signal. However, the district court concluded, "Taking the video with Officer Jensen's testimony leads to the inescapable conclusion that the State has met its burden of proving by a preponderance of the evidence that Officer Jensen had reasonable suspicion that Defendant violated § 31-5-217(b)." The district court also considered Mr. Dugan's use of a static speed of 25 miles per hour to calculate the distance Mr. Davis traveled with his turn signal activated:

> That leaves the Defendant's argument that using the time that the Defendant's turn signal was on and a speed limit of 25 m.p.h. results in a conclusion that the Defendant had his turn signal [on] for a distance well in excess of 100 feet. However, making this conclusion would require the Court to assume that

3

during the entire time the Defendant had his turn signal on he was traveling at least 25 m.p.h.  This assumption leads to one of two conclusions: (1) that the Defendant either slammed on his brakes right at the Collins intersection, which neither the video nor testimony supports, or (2) that the Defendant was traveling under 25 m.p.h. during some or all of the time his signal was on, which would undercut the Defendant's calculations.  The Court concludes that the evidence provided would support a conclusion far closer to the latter than the former.  Moreover, an exact distance is not required when determining if Officer Jensen had reasonable suspicion of violating § 31-5-217.

[¶10]  Mr. Davis entered a conditional guilty plea to possession of methamphetamine with intent to deliver, reserving his right to appeal the denial of his motion to suppress. The district court entered judgment and sentenced Mr. Davis to five to seven years in prison, suspended in favor of three years of supervised probation.  This appeal followed.

## STANDARD OF REVIEW

[¶11]  When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the district court's determination and defer to the district court's factual findings unless they are clearly erroneous. *Hanson v. State*, 2025 WY 56, ¶ 23, 568 P.3d 1186, 1192 (Wyo. 2025) (citation modified).  A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Marquez v. State,* 2025 WY 61, ¶ 47, 569 P.3d 356, 369 (Wyo. 2025) (citation modified).  We defer to the district court because it had an  opportunity to assess the witnesses' credibility, weigh the evidence, and make the necessary inferences, deductions, and conclusions. *Hanson*, ¶ 23, 532 P.3d at 1192 (citation modified).  Whether a search or seizure violated a constitutional right is a question of law that we review de novo.  *Id.*

## DISCUSSION

[¶12]  The Fourth Amendment to the United States Constitution protects people from unreasonable searches and seizures. *Kennison v. State,* 2018 WY 46, ¶ 13, 417 P.3d 146, 149 (Wyo. 2018) (citation omitted).  A traffic stop is a seizure within the meaning of the Fourth Amendment.  *Id.,* ¶ 13, 417 P.3d at 149 (quoting *Allgier v. State,* 2015 WY 137, ¶ 14, 358 P.3d 1271, 1276 (Wyo. 2015) (other citation omitted)).  To be lawful, such a stop must be supported by reasonable suspicion of criminal activity. *Anderson v. State,* 2023 WY 65, ¶ 9, 531 P.3d 912, 914 (Wyo. 2023).  Reasonable suspicion exists when an officer can articulate a particularized and objective basis to suspect a motorist is violating the law. *Elmore v. State*, 2021 WY 41, ¶ 10, 482 P.3d 358, 361 (Wyo. 2021).  Thus, where an

4

officer reasonably suspects a traffic law was violated, a stop is justified. *See Allgier,* ¶ 19, 358 P.3d at 1277 (finding the trooper had a reasonable suspicion—"a particularized and objective basis"—for suspecting a driver of breaking a traffic law, thereby justifying the stop).

[¶13]   We evaluate the reasonableness of an investigatory stop under the Fourth Amendment by using the two-part inquiry from *Terry v. Ohio,* 392 U.S. 1, 19-20, 88 S.Ct. 1868, 1879: "(1) whether the initial stop was justified; and (2) whether the officer's actions during the detention were reasonably related in scope to the circumstances that justified the interference in the first instance." *Ramirez v. State*, 2023 WY 70, ¶ 19, 532 P.3d 230, 235 (Wyo. 2023) (citations omitted).   "Reasonable suspicion is a lower standard than probable cause and requires a fact-centered inquiry based upon the 'totality of the circumstances.'" *Allgier*, ¶ 14, 358 P.3d at 1276 (quoting *Venegas v. State*, 2012 WY 136, ¶ 9, 287 P.3d 746, 749 (Wyo. 2012)).   Although the test is objective, we consider the officer's training, experience, and expertise as part of that totality. *Maestas v. State,* 2018 WY 47, ¶ 13, 416 P.3d 777, 782 (Wyo. 2018) (citations omitted).   Further, the reasonable suspicion standard does not require perfection, and the Fourth Amendment gives law enforcement some leeway for enforcing the law. *Allgier*, ¶ 14, 358 P.3d at 1276 (citing *Heien v. North Carolina,* 574 U.S. 54, 60-61, 135 S.Ct. 530, 536 (2014)).

[¶14]   Wyo. Stat. Ann. § 31-5-217(b) governs the use of turn signals while driving:

> (b) A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.

By its plain language, this statute requires signaling at least 100 feet before executing a turn. *Anderson,* ¶ 14, 531 P.3d at 915.   "Failure to signal within the required distance is objective evidence of failure to comply with the statute." *Id.*, ¶¶ 14, 16, 531 P.3d at 915, 916 (quoting *Peak v. State*, 26 N.E.3d 1010, 1015 (Ind. Ct. App. 2015)).

[¶15]   Here, Mr. Davis challenges only the basis for the stop, arguing Officer Jensen lacked reasonable suspicion to pull him over.   He does not contest the scope or duration of the stop, nor the search that followed.   In challenging the stop, Mr. Davis asserts that because he was 400-500 feet behind Mr. Davis, Officer Jensen did not have a reasonable basis for believing Mr. Davis failed to activate his turn signal at least 100 feet before he turned.

[¶16]   Mr. Davis's assertion ignores Officer Jensen's testimony related to his experience and training estimating speed and distance.   It also ignores the district court's favorable summary of Officer Jensen's testimony, citing his training, experience, and ability to estimate Mr. Davis's distance as "mere feet" from the stop sign before he activated his turn signal.

[¶17]   The district court also reviewed Officer Jensen's dash cam footage "numerous times."  The video shows Mr. Davis traveling down Chestnut Street when Officer Jensen turns onto Chestnut behind Mr. Davis.  While the footage did not make it "obvious" Mr. Davis signaled for less than twenty feet from the intersection, the court found the video, combined with Officer Jensen's testimony, led to the "inescapable conclusion that the State has met its burden of proving by a preponderance of the evidence that Officer Jensen had reasonable suspicion that Defendant violated § 31-5-217(b)."

[¶18]   The court also considered and ultimately discounted the analysis of Mr. Dugan, Mr. Davis's expert witness, who relied on a calculation of time and speed to assert the turn signal must have been active for more than 100 feet.  The court declined to adopt this view, noting it required an assumption that Mr. Davis was traveling at least twenty-five miles per hour for the entire time the signal was on.  The court found that "neither the video nor testimony" supported that assumption, and that instead the evidence demonstrated the more likely scenario was that Mr. Davis "was traveling under 25 m.p.h. during some or all of the time his signal was on."

[¶19]   While Mr. Davis presented alternative interpretations of the testimony and the dash cam footage, it is not this Court's role to reweigh the evidence or second-guess the trial court's credibility determinations.  *Hanson*, ¶ 23, 568 P.3d at 1192 (citation modified).  Instead, we defer to the district court's findings that Officer Jensen's estimate that Mr. Davis activated his signal no more than twenty feet before the intersection was credible and consistent with the evidence.  *Id*.; *see also Maestas*, ¶ 7, 416 P.3d at 780  ("A trial court's specific findings of fact are presumed to be correct.  We must accept the district court's factual findings on a motion to suppress unless they are clearly erroneous or influenced by an incorrect view of the law.").  Mr. Davis's argument that the officer's estimate was inaccurate relies on assumptions about speed and timing that the district court reasonably rejected.  Moreover, the Fourth Amendment does not require perfect precision in estimating distances—only that the officer had an objectively reasonable basis to suspect a violation occurred.  *Allgier*, ¶ 14, 358 P.3d at 1276 ("The ultimate touchstone of the Fourth Amendment is reasonableness . . . To be reasonable is not to be perfect . . .") (citation modified).

[¶20]   Considering the totality of the circumstances, including Officer Jensen's training and experience, his observations of Mr. Davis driving his pickup, and the dash cam footage, we conclude the district court reasonably found Officer Jensen had a sufficient basis to believe Mr. Davis had committed a traffic violation.  Specifically, viewing the evidence in the light most favorable to the district court's determination, Officer Jensen articulated a particularized and objective basis to suspect Mr. Davis failed to activate his turn signal at least 100 feet before turning, in violation of Wyo. Stat. Ann. § 31-5-217(b).  *Elmore*, ¶ 10, 482 P.3d at 361.  This is all that was required for a lawful stop of Mr. Davis's pickup.

**CONCLUSION**

[¶21] The district court did not err in denying Mr. Davis's motion to suppress. Considering the totality of the circumstances, Officer Jensen had reasonable suspicion to believe Mr. Davis violated Wyo. Stat. Ann. § 31-5-217(b). The district court's factual findings are supported by the record and are not clearly erroneous. Because the stop was lawful, the evidence obtained thereafter was admissible.

[¶22] Affirmed.